THE STATE OF OHIO, EX REL. DOWD., *v.* MOTION PICTURE "PAY THE BABY SITTER" ET AL.

(No. 116368—Decided April 21, 1972.)

Common Pleas Court of Stark County.

*Mr. David D. Dowd, Jr.,* prosecuting attorney, and *Mr. James R. Unger,* for the state.
*Mr. Seymour S. Detsky* and *Mr. Jerry P. Hontas,* for defendants.

210

QUINN, J. This matter is before the court on the application of the State of Ohio for a permanent injunction pursuant to R. C. 3767.03 to enjoin the exhibition of two alleged obscene films, to wit: "Pay the Baby Sitter" and "Open-Air Bedroom" and other obscene films and stage shows as a public nuisance, and on a motion to show cause for violation of orders in a temporary injunction issued in this matter pursuant to this statute.

Incorporated into the trial of this cause and received as part of the evidence was the court's viewing of the films "Pay the Baby Sitter" and "Open-Air Bedroom" at the State Burlesque Theater at 412 Tuscarawas Street, East, Canton, Ohio. The film "Pay the Baby Sitter" consisted of a number of episodes in which couples, male and female, became involved in various erotic activity. The participants were eventually in the nude, exhibited the genital areas and performed actual or simulated sexual acts. The theme of the film consisted of the introduction to a young female of an awareness of individual and paired sexual activity and her subsequent engagement either alone or in participation with various persons, male and female, in a variety of sexual acts. At the viewing by the court, the film ended with the young baby sitter and her boyfriend being found nude on the sofa engaged in an act of actual or simulated sexual intercourse by the residents of the apartment who suddenly returned, whereupon the two couples agreed to trade partners. However, testimony by Officers Fetterman and Maxson and the witness, Whitten Richman, indicated that when they had viewed this film prior to the official court presentation, that the film had gone on to show actual or simulated sexual intercourse between the two couples in an exchange of partners. These witnesses testified that these final scenes had been deleted from the viewing by the court.

The film "Open-Air Bedroom" presented a variety of scenes beginning with lesbian roommates involved in sexual activity with each other and going on to present their becoming involved with male partners. Most of the scenes were photographed in a wooded area a short distance from

what appeared to be a public park. Again, there were numerous scenes of nudity showing both the male and female genitalia and various acts of actual or simulated sexual intercourse.

Officers Fetterman and Maxson testified that when they viewed the film "Open-Air Bedroom" prior to the institution of suit, there was a scene showing the extraction of the erect male penis from the female but that this scene had been deleted from the viewing by the court.

In both movies the sole emphasis was on the provocative and the erotic, with the obvious intent to commercially exploit sex in a variety of lewd and lustful settings. Each film was dominated by a pattern of movement by the characters from one sex act to the next. Such acts included actual or simulated coitis, masturbation, sodomy, and lesbianism.

There was further testimony that when the witness, Whitten Richman, viewed the films at the State Theater on November 18, 1971, he also observed a filmstrip entitled "Spread Eagle." He testified that this filmstrip involved the exposure of the complete female genitalia in a manner intended to be sexually stimulating. This was corroborated by testimony of the witness Maxson.

Officer Fetterman testified that when he attended the State Theater on November 12, 1971, to observe the films "Open-Air Bedroom" and "Pay the Baby Sitter," he also observed a live dancer named Maria London, perform nude on the stage at which time she exposed the interior of the vaginal area to the viewing audience and engaged in a series of actions in running her hands through her pubic hair and around her breasts. Evidence relating to the live show was to the effect that the performances were completely nude and performed so as to expose the entire female genital area.

The court did not have the opportunity to view either the live show or the filmstrip "Spread Eagle," and must rely upon the other evidence presented.

No pleading was filed on behalf of the defendants and no testimony was presented in their behalf. In addition

to the witnesses, Fetterman, Maxson and Richman, the state called the defendant, Martin Konoph, who refused to testify on the ground that his testimony might incriminate him.

At the end of the state's case, the defense rested, advising the court that it intended to call no witnesses nor to present any evidence. The state's evidence clearly supports the conclusion that the defendant, Martin Konoph, has at all relevant times been the manager of the State Theater. Officer Fetterman identified the defendant, Konoph, in the courtroom and stated that he had seen him frequently at the Burlesque Theater; that as an officer of the Morals Bureau, Fetterman had had occasion to converse with Mr. Konoph concerning the types of films being shown; that Mr. Konoph had agreed to comply with the suggestions of the Morals Bureau from time to time with regard to particular movies being shown; that in the past Mr. Konoph had made deletions or cuts from films at the request of the Morals Bureau; that Officer Fetterman had observed Konoph give orders to ticket takers and had observed Konoph give an employee a pay envelope. Further, it was stipulated that the defendant, Konoph, was listed in the Canton City Directory as the manager of the State Burlesque Theater.

It was further stipulated that the lot and building within which the State Burlesque Theater is operated is owned by the defendant, Jamal Limited, Inc. Certain records of the County Auditor's Office were received in evidence showing this real estate to be owned by Jamal Limited, Inc., and further indicating that such premises were used as a theater.

Officer Fetterman further testified that he observed that the movies "Pay the Baby Sitter" and "Open-Air Bedroom" were exhibited on November 12 and 13. The witness, Whitten Richman, testified that he observed these films at the theater on November 18. There was further testimony that the standard running time at the State Theater for films was an entire week beginning Friday and ending Thursday of the following week.

The state's expert witness, Whitten Richman, an English instructor at the Kent State University Regional Campus, Stark County, testified that he had found the films "Pay the Baby Sitter" and "Open-Air Bedroom" to fit the following criteria:

1. The dominant theme of the material taken as a whole appeals to the prurient interest in sex;

2. The material is patently offensive because it confronts contemporary community standards relating to the description or representation of sexual matters;

3. The material is utterly without redeeming social value.

From the evidence, the court makes the following findings of fact:

1. The plaintiff, David D. Dowd, Jr., who brought this action in behalf of the state of Ohio, has at all relevant times been the duly elected and acting Prosecuting Attorney of Stark County, Ohio.

2. The defendant, Martin Konoph, was at all times referred to in the complaint, the manager of the State Burlesque Theater located at 412 Tuscarawas Street, East, Canton, Ohio.

3. The defendant, Jamal Limited, Inc., was at all relevant times, a corporation organized and existing under the laws of the state of Ohio and was the owner of the building and real estate located at 412 Tuscarawas Street, East, Canton, Ohio, wherein the State Burlesque Theater was located and operated on November 12, 1971 to November 18, 1971, inclusive.

4. Between the dates of November 12, 1971 and November 18, 1971, inclusive, the films "Pay the Baby Sitter" and "Open-Air-Bedroom" were exhibited at the State Burlesque Theater to members of the adult community who paid an admittance fee for the privilege of viewing said films and an accompanying like stage show performed by Maria London.

5. The exhibition of said films and live stage show was conducted under the control and supervision of the defendant, Martin Konoph, as manager of the State Bur-

lesque Theater, who was aided and abetted therein by the defendant, Jamal Limited, Inc. Said films, depicting actual or simulated sex acts, including coitis, lesbianism, masturbation, and sodomy, constituted material which is contrary to good morals and public decency and which the court finds to be lewd, indecent and lascivious.

At the outset of the trial, counsel for the defendants made numerous oral motions for dismissals as the record will indicate. Each of these motions is hereby overruled as to each separate branch as stated in the record, all of said matters having been previously decided in other cases. *Grove Press, Inc.,* v. *Flask* (1970), Case No. C69-735, United States District Court, Northern District of Ohio, Eastern Division; *State, ex rel. Keating,* v. *A Motion Picture Film Entitled "Vixen," et al* (1971), 27 Ohio St. 2d 278; *State, ex rel. Sensenbrenner,* v. *Adult Bookstore, et al.* (1971), 26 Ohio App. 2d 183; *State, ex rel. Ewing,* v. *"Without A Stitch"* (1971), 28 Ohio App. 2d 107; *State, ex rel. Keating,* v. *Cinema X International of Cincinnati, Inc.* (1972), Case No. A261971, Court of Common Pleas Hamilton County, Ohio; *State, ex rel. Dowd,* v. *"The Stewardesses"* (1971), Case No. 115815, Stark County Court of Common Pleas.

Before any material can be found to be obscene, three elements must coalesce: It must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. *Memoirs* v. *Massachusetts,* 383 U. S. 413. In considering these elements the court has adopted the following definitions of terms:

1. Coalesce—means to unite or merge into one body or mass; to grow together; to combine or blend into a single group.

2. Dominant theme—means the prevailing, governing, influencing or controlling idea.

3. Taken as a whole—means that the material must be considered in its entirety and not judged on just a part

or portion of it. Each film or performance must be considered separately and apart from each other.

4. Prurient—means to excite lustful thought; a shameful or morbid interest in sex; arouse sexual desires or sexual impure thoughts; inclined or disposed to lewdness; having lustful ideas or desires.

5. Patently offensive—the material must go beyond the customary limits of candor. It focuses predominantly upon what is sexually morbid, grossly perverse and bizarre. It is insulting to sex and the human spirit.

6. Contemporary community standards—are standards of the average person of the whole national community. Neither the standards of the most permissive or liberal localities or segments of society, nor the standards of the most restrictive or conservative localities or segments of society, constitute the national community standards. You determine its impact upon the average person in the community. The community is considered as a whole—young and old, educated and uneducated, religious and irreligious, men, women, and children. The conscience of the community must be judged by present-day standards.

7. Redeeming social value—

(a) The material advocates a constructive theme or idea; or

(b) It has literary, scientific or artistic value, purpose or justification; or

(c) It has some other form of social importance; or

(d) The material was disseminated for a bona fide medical, scientific, educational, religious, governmental, judicial or other proper purpose.

Acts of sexual intercourse, whether actual or simulated, are not constitutionally protected if they violate the criteria established by the United States Supreme Court in obscenity cases. *Memoirs* v. *Massachusetts, supra*; *State, ex rel. Keating,* v. *"Vixen," supra*; *State, ex rel. Ewing,* v. *"Without a Stitch," supra*; *Grove Press, Inc.,* v. *Flask, supra*; *State, ex rel. Sensenbrenner,* v. *Adult Bookstore, supra.*

This action having been brought pursuant to R. C.

Chapter 3767, the case must be decided in the light of the applicable statutes contained therein.

R. C. 3767.01 provides, in part, as follows:

"(C) 'Nuisance' means that which is defined and declared by statutes to be such and also means any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists, or any place, in or upon which lewd, indecent, lascivious, or obscene films or plate negatives, film or plate positives, films designed to be projected on a screen for exhibition films, or glass slides either in negative or positive form designed for exhibition by projection on a screen, are photographed, manufactured, developed, screened, exhibited, or otherwise prepared or shown, and the personal property and contents used in conducting and maintaining any such place for any such purpose."

R. C. 3767.02 provides as follows:

"Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent, or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent, or lessee is guilty of maintaining a nuisance and shall be enjoined as provided in R. C. 3767.03 to 3767.06, inclusive."

R. C. 3767.02 is a constitutionally permissible means of controlling obscenity. See *State, ex rel. Ewing,* v. *"Without a Stitch," supra.*

I find the films "Pay the Baby Sitter" and "Open-Air Bedroom" obscene as a matter of law for the following reasons:

1. The dominant theme of the material taken as a whole appeals to a prurient interest in sex;

2. The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters;

3. The material is utterly without redeeming social value. *Memoirs* v. *Massachusetts, supra.*

4. The criteria set forth in 1, 2, and 3 above, coalesce with regard to each of said films.

Having found both films obscene, it follows and I so find that a nuisance was conducted by the defendants at the State Burlesque Theater within the meaning of R. C. 3767.01.

The court now makes the following orders:

1. The defendants, Martin Konoph and Jamal Limited, Inc., and all persons acting by, through, under, or in concert with them are permanently enjoined and restrained from possessing or exhibiting the motion picture films "Pay the Baby Sitter" and "Open-Air Bedroom" and from exhibiting other obscene motion picture films and obscene live stage shows in Stark County, Ohio.

2. It is ordered that the films "Pay the Baby Sitter" and "Open-Air Bedroom" shown at the State Burlesque Theater between the dates of November 12 and November 18, 1971, inclusive, be brought into court by the defendants, whereupon the court orders said films confiscated and destroyed.

3. The State Burlesque Theater and the building containing it at 412 Tuscarawas Street, East, Canton, Ohio shall be immediately closed for any purpose for a period of one (1) year and the Sheriff of Stark County, Ohio, is hereby directed and ordered to effectuate such closing, providing that this order to close said premises for one (1) year shall be released if the owner of the real estate where said theater is situated shall file a bond with sureties approved by the clerk of courts in the sum of five thousand dollars ($5,000.00) conditioned that such owner shall immediately abate the nuisance by keeping the premises from being used as a place where lewdness or assignation is permitted, conducted, or exhibited, and in or upon which lewd, indecent, lascivious, or obscene films, photographs, and stage shows are exhibited.

4. Defendants shall pay the court costs.

5. Plaintiff's counsel to prepare entry in accordance with above findings and orders.

*Judgment for plaintiff.*