Nashua District Court
No. 6747

STATE OF NEW HAMPSHIRE v. DOUGLAS N. HARDING

May 31, 1974

*Warren B. Rudman*, attorney general, and *Robert V. Johnson II,* assistant attorney general (*Mr. Johnson* orally), for the State.

*Alvin Pudlin* (of Connecticut) and *Green, Sullivan & Green* and *Leonard Green* (*Mr. Pudlin* orally) for the defendant.

Kenison, C.J. The State has charged the defendant with the illegal sale on July 26, 1973, of three allegedly obscene magazines entitled "Foul Play No. Two", "Dr. Dikter and the Les" and "Savage" and one allegedly obscene book entitled "Girls Who Seduce Dogs." The defendant filed a motion to dismiss on the ground that the obscenity statute (RSA 571-A:2 (Supp. 1972)) was unconstitutional in view of *Miller v. California*, 413 U.S. 15 (1973), and other related Supreme Court cases. The Trial Court (*Harkaway*, J.) reserved and transferred without ruling the following questions:

"1. Is RSA 571-A:2 (Supp. 1972) unconstitutional in view of the recent Supreme Court cases?

"2. If RSA 571-A:2 (Supp. 1972) is constitutional, what standards are to be applied to the determination of obscenity?

"3. If RSA 571-A:2 (Supp. 1972) is constitutional, are these standards to be applied to the instant prosecution?

A person commits the crime of obscenity under RSA 571-A:2 (Supp. 1972) (now RSA 650:2 (Supp. 1973)) "when, with knowledge of the nature of the contents thereof, he ... sells, delivers or provides, or offers or agrees to sell, deliver or provide, any obscene writing, picture, record or other representation or embodiment of the obscene ...." Material is defined as obscene "if (a) considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social importance. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience." RSA 571-A:1 (Supp. 1972) (now RSA 650:1 (Supp. 1973)). This definition reflects the test of obscenity set forth by the Supreme Court in *Roth v. United States*, 354 U.S. 476 (1957), and *Memoirs v. Massachusetts*, 383 U.S. 413 (1966). *See* N.H. Judicial Council, 10th Biennial Report 30 (1964); Model Penal Code § 207.10(2) (Tent. Draft No. 6, 1957).

The *Roth-Memoirs* test was abandoned as unworkable by

the Supreme Court in *Miller v. California*, 413 U.S. 15, 23 1973), and the accompanying cases *Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973), *Kaplan v. California*, 413 U.S. 115 (1973), *United States v. 12 200-Ft. Reels of Super 8 MM. Film*, 413 U.S. 123 (1973), and *United States v. Orito*, 413 U.S. 139 (1973). In its place Chief Justice Burger, joined by four other Justices, has developed a new set of guidelines which incorporates elements of the former test, but in essence lessens the burden of proof for the prosecution. Under the *Miller* test, a statute regulating obscenity must be limited to works (1) which, taken as a whole, can be found to appeal to the prurient interest in sex by the average person applying contemporary community standards, (2) which depict or describe in a patently offensive way sexual conduct specifically defined by the applicable state law, as written or authoritatively construed, and (3) which, taken as a whole, do not have serious literary, artistic, political or scientific value. *Miller v. California*, 413 U.S. at 24. This test eliminates the onerous *Roth-Memoirs* requirement that the allegedly obscene material must be proven to be "utterly without redeeming social value" and substitutes instead a less restrictive standard which permits the regulation of material lacking "serious literary, artistic, political or scientific value." However, while this aspect of the former test is made less stringent, the *Miller* formulation attempts to remove the inherent uncertainty in the *Roth-Memoirs* phrase "patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters" by requiring that the prohibited subject matter be specifically defined by state law. The purpose of such specificity is to avoid the chilling effect of general language on legitimate activities protected by the first amendment and to provide fair notice as to what materials are subject to regulation. *Id.* at 25-27; *see The Supreme Court, 1972 Term*, 87 Harv. L. Rev. 55, 160-75 (1973).

In view of this alteration of the test of obscenity, the trial court has requested a ruling from this court on the constitutionality of RSA 571-A:2 (Supp. 1972). It should be first noted that *Miller* and the accompanying cases did not "undertake to tell the States what they must do, but rather to define the area in which they may chart their own course

in dealing with obscene material." *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 53-54 (1973). These cases clearly limit the area of regulation to representations or depictions of "patently offensive 'hard core' sexual conduct." *Miller v. California,* 413 U.S. at 27. Second, it should be observed that these cases establish that the States have a legitimate interest in controlling the dissemination of obscene material to any person, whether adult or child. *Paris Adult Theatre I v. Slaton,* 413 U.S. at 57-70. Accordingly, we believe that RSA 571-A:2 (Supp. 1972) is not constitutionally defective for imposing a broad ban on the sale or distribution of obscene material in this State. *See People v. Heller,* 33 N.Y.2d 314, 307 N.E.2d 805, 352 N.Y.S.2d 601 (1973).

The key question is whether the definition of obscene material in RSA 571-A:1 (Supp. 1972) contains sufficiently rigorous standards to withstand constitutional scrutiny. In analyzing its provisions, we proceed with the knowledge that the task of identifying obscene material is "a labor as frustratingly impossible as is nailing custard pies to trees." (Kuh, Foolish Figleaves? Pornography in-and-out of Court 215 (1967); *see* Benjoya, Zisson & LaCroix, *Obscenity: The New Law and its Enforcement — Two Views,* 8 Suffolk U.L. Rev. 1 (1973); Loewy, *Abortive Reasons and Obscene Standards: A Comment on the Abortion and Obscenity Cases,* 52 N.C.L. Rev. 223, 234-41 (1973); Note, *The New Obscenity Standard,* 6 Conn. L. Rev. 165 (1973).

RSA 571-A:1 (Supp. 1972) was enacted by the legislature in 1965 (Laws 1965, 146:1) and closely follows the definition of obscenity as set forth in Model Penal Code § 207.10(2) (Tent. Draft No. 5, 1957). The ALI version was recommended to the legislature by the judicial council because it was designed "to give the public the broadest protection against obscenity." N.H. Judicial Council, 10th Biennial Report 30, 33 (1964). *See also* N.H. Attorney General Legal Memorandum on Obscenity (July 20, 1973). It was amended in 1970 (Laws 1970, 24:1) to incorporate a slight variation of the *Memoirs* phrase "utterly without redeeming social value."

Part (a) of the New Hampshire statute requires that the predominant appeal be to the "prurient interest" and specifi-

cally describes such an interest as "a shameful or morbid interest in nudity, sex or excretion." Although *Miller* superimposes the requirement that the material must be judged "prurient" by contemporary community standards, the langauge of the ALI version is similar to that used in the new test. In fact, the ALI version attempts to define the term "prurient interest" with more particularity. According to *Webster's Third New International Dictionary* (1961), the word "shameful" has the connotation of "something worthy of strong censure" (interestingly enough the archaic meaning of shame is "the external genitalia") and the word "morbid" implies something which is "diseased" or "not sound or healthful". *See Roth v. United States,* 354 U.S. 476, 487 n.20 (1957); *Luros v. United States,* 389 F.2d 200, 203-04 (8th Cir. 1968); *Eastman Kodak Co. v. Hendricks,* 262 F.2d 392, 397 (9th Cir. 1958); *United States v. Keller,* 259 F.2d 54, 58 (3d Cir. 1958); Annot., 5 A.L.R.2d 1158, § 10 (1966, Supp. 1973). The cumulative effect of these two words is to focus on material which exploits or caters to unhealthy, antisocial attitudes toward nudity, sex or excretion — in short, "material which portrays sex with a loose-lipped, sensuous leer." *Flying Eagle Publications, Inc. v. United States,* 273 F.2d 799, 803 (1st Cir. 1960); *see* Model Penal Code § 207.10, at 29-31 (Tent. Draft No. 6, 1957). In our view such attitudes lie at the heart of hard-core pornography, providing its tensile strength, and thus are a proper subject for regulation under *Miller*.

Part (b) of the New Hampshire statute requires the material to go "substantially beyond customary limits of candor in describing or representing [nudity, sex or excretion.]" The *Miller* opinion has moved away from the ALI phraseology and proposes a test premised on a determination of whether the material depicts or describes sexual conduct in a "patently offensive way" under community standards. *Miller v. California,* 413 U.S. at 24, 30-34. The old phrase is sufficiently elastic to include the new *Miller* test.

*Miller* adds the additional requirement that the prohibited depictions or descriptions of sexual conduct must be specifically defined by the applicable state law, as written or authoritatively construed. The definition of obscenity in parts (a) and (b) expressly refers to "nudity, sex or excretion."

Since the *Miller* opinion expressly limits the scope of state regulation to sexual conduct (413 U.S. at 27), depictions or descriptions of mere nudity or excrement without sexual overtones are protected by the first amendment. The term "nudity" is defined by *Webster's Third New International Dictionary* (1961) as being "unclothed" and conveys a connotation of the exposed human male or female genitals, pubic area or buttocks. *See* RSA 571-B:1 (Supp. 1973). The term "excretion" is defined by the same dictionary as "the process of eliminating useless, superfluous or harmful matter (as the waste product of the metabolism) from the body of an organism." The clear implication of this term, in the context of the obscenity statute, is that it relates to matters pertaining to the excretory functions.

While it is possible to give some meaningful content to these words, the crucial word "sex" and the related phrase "sexual conduct" cannot be so easily packaged. These words are loosely used in contemporary vernacular to describe conduct ranging from actual intercourse to nonphysical interpersonal relations, such as a seductive smile or the use of an alluring perfume. In attempting to tailor their meaning to the context of the obscenity statute, it is important to bear in mind that the *Miller* Court expressly stated that prosecutions will be limited to representation or depictions of "patently offensive 'hard core' sexual conduct." *Miller v. California*, 413 U.S. at 27. The Court gave two examples of the type of activity falling within this phrase: (1) "Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated" and; (2) "Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.* at 25. It is true that the qualifying phrases "patently offensive" and "lewd" do not precisely describe the activities banned by such examples. *See* 51 J. Urban L. 314, 321 (1973). Nevertheless, the thrust of the opinion is addressed to graphic representations or descriptions of (1) all forms of actual or simulated intercourse between humans or humans and animals in which the genitalis of one party is inserted into an orifice of another; (2) oral contact with the genitalia or manual contact with genitalia in a turgid state; (3) the insertion

of any instrument or other device into the genital or anal passage in the course of activity designed to arouse or excite the genitalia; (4) the use of instruments or other devices by one party to inflict pain on another in the course of activity designed to arouse or excite the genitalia; or (5) the use of excrement or excretory functions in the course of activity designed to arouse or excite the genitalia; or (6) the genitalia in a turgid state. *See United States v. Young*, 465 F.2d 1096, 1098-99 (9th Cir. 1972); *United States v. Wild*, 422 F.2d 34, 36 (2d Cir. 1970); *Armijo v. United States*, 384 F.2d 694 (9th Cir. 1967); Annot., 5 A.L.R.3d 1158, § 6 (1966, Supp. 1973). *See also* Hawaii Penal Code tit. 37, §§ 1210-16, 1972 Hawaii Session Laws act 9, ch. 12, pt. II, 126-29; Oregon Laws 1971, ch. 743, art. 29, §§ 255-62. In our view these enumerated categories are sufficiently concrete to describe patently offensive "sex" or "sexual conduct" and to provide fair warning under *Miller* as to the scope of RSA 571-A:1 (Supp. 1972).

Part (c) of the New Hampshire statute requires that the material must be "utterly without redeeming social importance." Although this standard has been discarded by the Supreme Court, it remains an integral part of our statute and all prosecutions thereunder must meet this burden of proof. However, in light of the *Miller* opinion, it would be fair to say that the meaning of this phrase has been refined from its earlier ambiguity. *Miller* stated that in order to be obscene, material must be lacking in "serious literary, artistic, political or scientific value." *Miller v. California*, 413 U.S. at 24. The Court has clearly implied in this formulation that such materials are not matters of "redeeming social importance." The scope of our statute regulates materials addressed solely to sex for its own sake, and the prosecution must prove that allegedly obscene materials, taken as a whole, lack literary, artistic, political or scientific value. *See State ex rel. Dowd v. "Pay The Baby Sitter"*, 31 Ohio Misc. 208, 215, 287 N.E.2d 650, 655 (1972).

In essence, RSA 571-A:1 (Supp. 1972) is designed to limit regulation of obscenity to those materials which primarily seek to exploit unhealthy, antisocial attitudes toward sexual conduct, as defined above, by graphically depicting or representing such conduct in a patently offensive manner, leav-

ing nothing to the imagination and having as a theme sex for the sake of sex alone. We are satisfied that our statute is constitutional under the *Miller* decision.

Our review of the magazines "Foul Play No. Two", "Dr. Dikter and the Les" and "Savage" and the book "Girls Who Seduce Dogs" has revealed to us that they depict or represent various activities enumerated under part (b) of our statute as construed. Whether they would appeal to the "prurient interest in sex by the average person applying contemporary community standards" and whether they "lack literary, artistic, political or scientific value" are questions that would be determined by the trier of fact.

In order to dispose of these cases it is argued that we rely on *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942), in which the Supreme Court found that there was no denial of due process in our upholding the conviction of a defendant under a statute which was construed on review to encompass his acts. However, in *Chaplinsky* the Court made a point of noting that the challenged statute, which regulated the breach of peace, had been previously construed so that the "[a]ppellant need not therefore have been a prophet to understand what the statute condemned." *Chaplinsky v. New Hampshire,* 315 U.S. at 574 n.8. *See also* Rutzick, *Offensive Language and the Evolution of First Amendment Protection,* 9 Harv. Civ. Rights L. Rev. 1 (1974); Note, *Violence and Obscenity – Chaplinsky Revisited,* 42 Fordham L. Rev. 141 (1973). In comparison, obscenity statutes have been the subject of controversy and confusion since 1957 when *Roth v. United States,* 354 U.S. 476 (1957), was decided. Various members of the Supreme Court have expressed dissatisfaction over their inability to frame definite standards in this area so as to provide fair warning to those prosecuted under the obscenity statutes. *Miller v. United States,* 413 U.S. at 22, 37 (Douglas, J., dissenting); *Paris Adult Theatre I v. Slaton,* 413 U.S. at 80-83 (Brennan, J., dissenting); *cf. Ginzburg v. United States,* 383 U.S. 463, 499 n.3 (1966) (Stewart, J., dissenting). The *Miller* opinion recognized this failure and stressed the need for specificity under state laws, as written or authoritatively construed. It is therefore not correct, as the State has urged, to say that the defendant had sufficient warning under the

*Roth-Memoirs* test as to the obscene nature of the materials in issue. *See State v. Welke,* 216 N.W.2d 641 (Minn. 1974); *United States v. Lang,* 361 F. Supp. 380, 382 (D. Cal. 1973); *see Coates v. Cincinnati,* 402 U.S. 611, 614 (1971); *Bouie v. Columbia,* 378 U.S. 347, 352-53, 362-63 (1964). Under the circumstances of this case, we believe that it would be impermissible to subject the defendant to a trial on these issues in these cases.

Accordingly, the order is

*Cases dismissed.*

All concurred.