Hillsborough
No. 7894

## THE STATE OF NEW HAMPSHIRE

v.

## MANCHESTER NEWS COMPANY, INC.

April 25, 1978

*David H. Souter*, attorney general, *Mr. Richard B. Michaud*, attorney, and *Peter W. Heed*, assistant attorney general (*Mr. Heed* orally), for the State.

*Sheehan, Phinney, Bass & Green P. A.*, of Manchester (*W. Michael Dunn* orally), for the defendant.

BOIS, J.   Manchester News Company, Inc., of Bedford, New Hampshire, is a corporation engaged in the business of distributing periodicals to local dealerships in New Hampshire. In September 1976, an indictment was returned by the grand jury alleging that the defendant delivered the July 1976 issue of *Penthouse* to LUV Pharmacy, Inc., and that this issue of *Penthouse* was obscene. The defendant moved to dismiss the indictment on various grounds including the ground that no criminal knowledge on the part of the defendant was alleged. The State subsequently substituted an information for the indictment, charging the defendant with the same offense and adding the language "with knowledge of the nature of the contents [of the magazine], contrary to RSA 650:2. . . ." The information was allowed by the court over defendant's objection, and the motion to dismiss was deemed by the court to be applicable to the information.

After arguments on the defendant's motion to dismiss, the Superior Court (*Keller*, J.) denied the motion. All questions of law raised by the pleadings, rulings, and exceptions were reserved and transferred.

The defendant raises three issues: (1) whether the information describes the alleged offense with sufficient definiteness, (2) whether RSA ch. 650 (Supp. 1976) violates the United States Constitution, and (3) whether the legislature intended this type of defendant to be prosecuted under RSA ch. 650 (Supp. 1976).

*I. The Indictment Issue*

In order to be guilty of distributing obscene material under RSA 650:2 (Supp. 1976), a defendant need not have had knowledge that the material was obscene, but must be shown to have had knowledge of the nature of the contents thereof. *Hamling v. United States*, 418 U.S. 87 (1974). The defendant contends that the information defectively alleges the knowledge element of the offense because it does not specify how or when the defendant received knowledge of the contents of the July 1976 issue of *Penthouse*, or which agent of the corporation possessed the requisite knowledge. This, the defendant claims, is a violation of part I, article 15 of the New Hampshire Constitution, which provides: "No subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him. . . ."

[2–5]  An indictment or information "must inform the defendant of the offense for which he is charged with sufficient specificity so that he knows what he must be prepared to meet and so that he is protected from being twice put in jeopardy." *State v. Bean*, 117 N.H. 185, 188, 371 A.2d 1152, 1154 (1977); *State v. Inselburg*, 114 N.H. 824, 827, 330 A.2d 457, 459 (1974). An indictment or information will generally give sufficient notice to the defendant of a statutory offense when the charge follows the language of the statute and alleges all the necessary elements of the offense with sufficient specificity. *Hamling v. United States*, 418 U.S. 87, 117–18 (1974); *State v. Bean supra; State v. Inselburg, supra;* 2 F. Wharton, Criminal Procedure § 289 (12th ed. 1975). Every fact the State intends to prove, however, does not have to be pleaded in the information. The test is not whether the information could be more comprehensive and certain. To the contrary, the information need contain only the elements of the offense and enough facts to warn the accused of the specific charges against him. The information in this case sufficiently apprised the defendant that he was being charged with having knowledge of the contents of a certain magazine. It was not necessary for the State to allege how or when the defendant acquired this knowledge.

It was also not necessary for the information to state which agent of the corporate defendant possessed knowledge of the maga-

zine's contents. An information charging a corporation with an offense need not indicate for whose acts the corporation is being charged. *See United States v. Van Allen*, 28 F.R.D. 329 (1961 S.D.N.Y.); *United States v. Detroit Sheet Metal & Roofing C. Ass'n*, 116 F. Supp. 81 (E.D. Mich. 1953); *State v. Oregon City Elks Lodge No. 1189, BPO Elks*, 17 Ore. App. 124, 520 P.2d 900 (1974).

The defendant's second challenge to the sufficiency of the information concerns the use of the phrase "obscene material." The defendant would have the State allege exactly why the magazine is obscene. It contends that the information should allege facts from which the obscenity of the magazine in issue could be found. This argument was considered by the United States Supreme Court in *Hamling v. United States*, 418 U.S. 87 (1974). In *Hamling* the defendants were charged, *inter alia*, with mailing obscene material in violation of 18 U.S.C. § 1461. The Court recognized that the definition of obscenity is not a question of fact, but one of law. The word "obscene" is not merely a descriptive term, but a legal term of art. The legal definition of obscenity does not change with each indictment; it is a term "sufficiently definite in legal meaning to give a defendant notice of the charge against him." *Hamling v. United States*, 418 U.S. at 118; *see Roth v. United States*, 354 U.S. 476 (1957). Because obscenity is sufficiently definite in legal meaning to give a defendant notice of the charge against him, no facts have to be alleged in the indictment or information that would support a finding of obscenity. We therefore hold that the information in this case is sufficient to inform the defendant of the charge against it.

*II. The Obscenity Statute Issue*

A.

The thrust of defendant's argument concerning the constitutionality of the New Hampshire obscenity statute, RSA ch. 650 (Supp. 1976), is that it regulates expression protected under the United States Supreme Court decision in *Miller v. California*, 413 U.S. 15 (1973).

The United States Supreme Court in *Miller v. California* established the basic guidelines for distinguishing between material protected by the first and fourteenth amendments, and unprotected obscene material. The oft-repeated three-prong test of *Miller* is:

(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, . . .

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole lacks serious literary, artistic, political, or scientific value. *Id.* at 24.

The Court attempted to establish a test for isolating descriptions or depictions of patently offensive hard-core sexual conduct. *Miller v. California*, 413 U.S. at 27; *see State v. Harding*, 114 N.H. 335, 339, 320 A.2d 646, 649 (1974). The State must specifically define or describe the sexual conduct which it wishes to regulate in order to "provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." *Miller v. California*, 413 U.S. at 27. The Court also intended to place a limitation on the types of sexual conduct a State may regulate. While not limiting States to these examples, the Court said that "(a) [p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated . . . [and] (b) [p]atently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals" were the types of hard-core sexual conduct which the States could regulate. *Miller v. California, id.* at 25.

Cases after *Miller* make it clear that part (b) of the *Miller* test and the examples given by the Court were intended to be a substantive limitation on the sexual conduct a State may list in its statute. In *Jenkins v. Georgia*, 418 U.S. 153, 160–61 (1974), the Court said that the examples given in *Miller* were "certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination [of obscenity]. It would be wholly at odds with this aspect of *Miller* to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, even though a properly charged jury unanimously agreed on a verdict of guilty." The Court reiterated this position in *Hamling v. United States*, 418 U.S. 87, 114 (1974): "*Miller* . . . was speaking in terms of substantive constitutional law of the First and Fourteenth Amendments. . . .[T]here is a limit beyond which neither legislative draftsmen nor juries may go in concluding that particular material is 'patently offensive' within the meaning of the obscenity test set forth in the *Miller* cases." The Court has referred to this substantive limitation in recent obscenity opinions. *See Ward v. Illinois*, 431 U.S. 767 (1977); *Smith v. United States*, 431 U.S. 291 (1977).

The question therefore becomes whether the legislature exceeded this substantive constitutional limitation in RSA 650:1 VI (Supp. 1976). This section defines sexual conduct as:

[H]uman masturbation, sexual intercourse actual or simulated, normal or perverted, *or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female,* whether alone or between members of the same or opposite sex or between humans and animals, any depiction or representation of excretory functions, any lewd exhibitions of the genitals, flagellation or torture in the context of a sexual relationship. . . . (Emphasis added.)

It is the emphasized portion of the above statute which is troublesome. The kinds of sexual conduct therein specified by the legislature are certainly not as tame as the bare midriff example of Mr. Justice Rehnquist in *Jenkins v. Georgia,* 418 U.S. 153, 161 (1974). However, they are certainly not as "hard core" as the examples given in *Miller* and emphasized in *Jenkins* and *Hamling,* or the categories of sexual conduct we enumerated in *State v. Harding,* 114 N.H. 335, 341, 320 A.2d 646, 651 (1974). Such a broad sweep by the legislature can create a chilling effect on protected expression, which is what the *Miller* court wanted to avoid.

■ We must therefore hold the above-emphasized portion of RSA 650:1 VI (Supp. 1976) as violative of the first and fourteenth amendments of the United States Constitution, and those listed sexual activities must be read out of that section.

B.

Defendant also attacks the statute on the ground that it does not specify the requisite scienter for a conviction. RSA 650:2 (Supp. 1976) (amended by Laws 1977, 199:2) requires that the defendant deliver the obscene material with knowledge of the nature of the contents, and RSA 650:1 II (Supp. 1976) defines knowledge as a "general awareness of the nature of the content of the material." The defendant claims this is defective under *Hamling v. United States,* 418 U.S. 87 (1974), because it does not require *specific* knowledge of the contents of the material.

Defendant cannot seriously be contending that the distributor of an obscene magazine must be shown to have known of every detail of the magazine before he may be convicted. On the other hand, no one can contend that a distributor may be convicted without any requirement of scienter. *Smith v. California,* 361 U.S. 147 (1959). The amorphous area between these extremes is at issue, but to us this issue is more of semantics than substance.

■ In *Mishkin v. State of New York*, 383 U.S. 502 (1966), the United States Supreme Court validated the New York Court of Appeals' interpretation that its statute requires the defendant to be "in some manner aware of the character of the material." The Supreme Court made reference to *Mishkin* in *Hamling*, in which it upheld the trial court's jury instruction that defendant needed to have "knowledge of the character of the materials." The Court said that "[i]t is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials." *Hamling v. United States*, 418 U.S. at 123. In light of the definitions of scienter to which the Supreme Court has given approval, we cannot say RSA 650:1 II (Supp. 1976) is unconstitutional. Having a general awareness of the nature of the contents of the material is, in our opinion, the same as being in some manner aware of the character of the material, and having knowledge of the nature, contents, or character of the material. It does not make a defendant absolutely liable, but liable only if he is aware of the nature of the material; the statute is therefore constitutional.

### III. The Legislative Intent Issue

The defendant claims that the prosecution of a distributor corporation is contrary to the following expression of legislative intent:

> It is the express intent of the general court that . . . RSA 650 . . . apply only to those persons actually responsible for the production and dissemination of pornographic or obscene materials. Laws 1976, 46:6.

The defendant theorizes that the legislature intended the statute to apply only to the producer of the material, and not to the mere distributor of obscene material. We cannot agree with the defendant.

■ The language of RSA 650:2 (Supp. 1976) (amended by Laws 1977, 199:2) manifests the legislature's intent to attach criminal liability to more than just the person or corporation responsible for the decision to produce the obscene material. The legislature clearly intended to include those individuals and corporations in the chain of distribution. This is indicated by the language of RSA 650:2 (Supp. 1976): "[S]ells, delivers or provides, or offers or agrees to sell, deliver or provide, . . . otherwise makes available any obscene material; . . . possesses any obscene material for the purposes of sale or other commercial dissemination. . . ." RSA 650:1 I (Supp. 1976) includes in the definition of "disseminate" the terms "distribute" and "sell." The legislature would not have used this language if it

intended to exclude distributors of obscene material. We hold that the defendant is within the scope of the statute.

We therefore remand for further proceedings consistent with our construction of RSA ch. 650 (Supp. 1976).

*Exceptions sustained in part; remanded.*

LAMPRON, J., did not sit; the others concurred.