Harold B. GOTLEIB, Defendant
below, Appellant,

v.

The STATE of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 17, 1978.

Decided June 25, 1979.

Myron T. Steele, of Prickett, Ward, Burt & Sanders, Wilmington, and Robert E. Levy, Asbury Park, N. J., for defendant below, appellant.

Kenneth R. Abraham, Deputy Atty. Gen., Dover, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

McNEILLY, Justice:

Defendant was convicted by a Superior Court jury of violating 11 *Del.C.* § 1361(1), by recklessly selling obscene material, and of two counts of violating 11 *Del.C.* § 1361(4), by recklessly possessing obscene material for purposes of sale or other commercial dissemination.[1] On appeal, defendant contends that the Trial Court erred in denying his motion to suppress a film which police seized without a warrant and that admission of the film into evidence prejudicially tainted the other evidence, requiring reversal of his conviction on all three counts. Defendant also contends that: the Trial Court erred in denying his motion to dismiss because 11 *Del.C.* § 1362(2) denied defendant his Fourteenth Amendment right to equal protection of the laws; the requisite element of scienter was not charged in any of the indictments, not proven by the State at trial, nor correctly submitted to the jury in the Trial Court's instructions; the State failed to introduce any evidence and the Trial Court failed to properly instruct the jury concerning the prurient appeal of the allegedly obscene materials; the Trial Court's unfamiliarity with obscenity law denied defendant his Sixth Amendment right to a fair trial; and, the materials upon which his convictions were based are not obscene as a matter of law.

We reverse defendant's conviction on the count based upon the film which police seized without a warrant, but finding no merit to any of defendant's other contentions, we affirm his convictions on the remaining two counts.

I

On January 17, 1977, Officers Petka and Nilan of the Delaware State Police entered the store known as "Adult World" which was owned and operated by defendant Harold Gotleib.

Officer Petka purchased from defendant three magazines entitled "Lollitots", "Tiny Nudes", and "Little Girls Together", and one film entitled "Linda Lovelace in Dogarama"; immediately thereafter, he placed defendant under arrest. The magazines and the film were the subject of the indictment (IK–77–02–0044) charging defendant with a violation of 11 *Del.C.* § 1361(1).

Officer Petka then asked defendant whether there was anyone else present or who could be called to operate the store while defendant was taken by the police for processing and arraignment. Defendant replied that there was not anyone readily available, but that he could lock up the store.

While attempting to remove the customers, Officer Nilan walked to the rear of the store and, as a customer left a small movie projection booth, the officer glimpsed some scenes of a film which depicted two naked children in a bed engaging in sexual contact with one another. Officer Nilan called his partner and defendant to the projection booth, whereupon defendant was asked if he had another film such as that being shown and defendant replied in the negative. Officer Nilan placed a quarter into the projector and the two officers viewed an approximate three minute length of the film.

---

1. Defendant was indicted on February 14, 1977, at which time 11 *Del.C.* § 1361 provided in pertinent part:

"A person is guilty of obscenity when he knowingly or recklessly:
(1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide, any obscene picture, writing, record or other representation or embodiment of the obscene; or . . . (4) Possesses any obscene material for purposes of sale or other commercial dissemination."

The section was rewritten by 61 Del.Laws, c. 121, effective July 8, 1977.

Officers Nilan and Petka then discussed with two other officers who were present whether they should seize the film, since none of them had purchased it. Having concluded that the film might be removed should they leave it, the officers asked defendant to remove the film from the projector and give it to them, which defendant did. The film became the subject of the second indictment (IK–77–06–0050) charging defendant with a violation of 11 *Del.C.* § 1361(4); it also was the subject of the motion to suppress which the Trial Court denied.

The police came into possession of two other magazines entitled "Every Dog Has His Day" and "Lollitots" and one film entitled "Dog Tamer", which formed the basis for defendant's third indictment (IK–77–02–0045) charging a violation of 11 *Del.C.* § 1361(4).

## II

Defendant first contends that the Trial Court erred in denying his motion to suppress the film which police officers seized without a warrant. Defendant argues that the warrantless seizure of the film was not justified by exigent circumstances as required by *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), and thus, constituted an unlawful prior restraint in violation of the First Amendment. The State argues that there were exigent circumstances to justify seizure of the film without a warrant, and in any event, that the film was properly seized incident to defendant's lawful arrest, within the plain view of the arresting police officers, or as contraband.

In *Roaden*, a county sheriff, accompanied by a district prosecutor, purchased tickets to a local drive-in theater, wherein the sheriff viewed a sexually explicit film in its entirety. At the conclusion of the film the sheriff arrested petitioner, the theater manager, for exhibiting an obscene film and seized, without a warrant, the film for use as evidence. Petitioner's motion to suppress the film was denied, and he was convicted. The Kentucky Court of Appeals

affirmed petitioner's conviction on the ground that the film was properly seized incident to a lawful arrest.

The United States Supreme Court reversed the Kentucky Court of Appeals holding that, in the absence of exigent circumstances, seizure of a film exhibited to the general public without the authority of a constitutionally sufficient warrant is a prior restraint on freedom of expression, in violation of the First Amendment, and thus, an unreasonable seizure under Fourth Amendment standards. 93 S.Ct., at 2801–2802.

 In so holding, the Court stated: "The seizure of instruments of a crime, such as a pistol or a knife, or 'contraband or stolen goods or objects dangerous in themselves,' . . . are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under Fourth or Fourteenth Amendment standards."

\* \* \* \* \* \*

"Seizing a film . . . being exhibited to the general public presents essentially the same restraint on expression as the seizure of all the books in a bookstore. Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression." 93 S.Ct., at 2800–2801.

The Court then proceeded to carve out an apparent exception to the general proscription against warrantless seizures of pre-

sumptively protected First Amendment materials:

> "[O]rdinary human experience should teach that the seizure of a movie film from a commercial theater with regularly scheduled performances, where a film is being played and replayed to paid audiences, presents a very different situation from that in which contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of weapons, or other evidence or instruments of crime, without a warrant. . . 27 Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." 93 S.Ct., at 2801–2802.

The State argues that *Roaden* is distinguishable from the case before us in that *Roaden* involved a warrantless seizure from a commercial movie theater of a film which was being displayed to a large audience according to regularly scheduled performances, whereas the present case involved a warrantless seizure from a "peep show" booth in an "adult bookstore" of a film which was being displayed only to individuals upon demand.

■ However, it appears that defendant's "adult bookstore" was a continuing operation which was open to the public during regularly scheduled business hours. Moreover, in the present case, as in *Roaden*, the facts concerning the seizure of the film are uncontested: (1) the police had no warrant when they made the arrest and seizure, (2) there had been no prior independent judicial determination of obscenity, and (3) the seizure of the film was based solely on the observations of the arresting police officers. We think that the principles announced in *Roaden* as to warrantless seizures of presumably protected First Amendment materials apply in the instant case. Therefore, we reject the State's contentions that the film was lawfully seized incident to defendant's lawful arrest, within the plain view of the arresting police officers, or as contraband. *See United States v. Sherwin*, 9 Cir., 572 F.2d 196 (1977), *cert. denied*, 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978); *United States v. Kelly*, 8 Cir., 529 F.2d 1365, 1372 (1976); *Parish of Jefferson v. Bayou Landing Ltd.*, La. Supr., 350 So.2d 158 (1977).

■ We now focus upon whether the facts in the instant case present "exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime." 93 S.Ct., at 2802.

The transcript of the suppression hearing reveals that when the prosecutor asked Officer Petka if he knew whether anyone other than defendant had a key to the store, the officer responded, "We felt certain that other people did have keys, employees of the establishment." However, when Officer Nilan was questioned by defense counsel whether he was aware that other people had keys to the store, Officer Nilan replied (in seeming contradiction to Officer Petka) that he was not. Officer Nilan then proceeded to testify, "There was discussion, as I recall, that if we did leave the film there it would probably have been removed." Apart from these two presumptive statements, there is nothing in the record to indicate that seizure of the film had to be " 'now or never' to preserve the evidence of the crime." 93 S.Ct., at 2802. Nor is there anything in the record to indicate that anyone other than defendant had access to the building who might remove the film, and assuming *arguendo*, as the officers had presumed, that someone other than defendant had access, that the film was likely to be removed.

In fact, four police officers were present at the bookstore at the time defendant was arrested. When asked by defense counsel whether the officers had considered leaving one of the officers to watch the store (presumably to enable one of the others to secure a warrant), Officer Nilan responded:

> "We were not able to leave other policemen there because we were quite busy that evening. We had visited several stores in the other counties and we were

still in the process of processing individuals that had been arrested. So there was a need for us to expedite matters and get to the truth. I believe we had three persons under arrest that evening that had to be processed."

The desire of the police to expedite processing at the station, coupled with their mere speculation that immediate seizure of the film was necessary to prevent its loss or destruction, are not the sort of "now or never" circumstances contemplated by the Supreme Court in *Roaden*. Absent any factual basis to support the officers' conclusion that the film probably would have been removed, seizure of the film without a warrant was clearly improper. Thus, the Trial Court erred in denying defendant's motion to suppress and defendant's conviction on that count (IK–77–06–0050) must be reversed.

■ However, it does not necessarily follow that defendant's convictions on the other two counts (IK–77–02–0044, IK–77–02–0045) should be reversed. We find no evidence in the record to support defendant's contention that introduction of the improperly seized film prejudicially tainted the other evidence against him. The Trial Court properly instructed the jury to consider each charge separately, and there is no indication the jury did otherwise.

### III

We turn now to defendant's other contentions.

Defendant asserts that he was deprived of equal protection of the laws in that he was denied an affirmative defense provided by 11 *Del.C.* § 1362(2) which would have been available to another defendant who had disseminated obscene material in a noncommercial context.[2] Defendant claims there is no rational justification for the distinction between those who disseminate obscene materials commercially and those who disseminate them noncommercially.

"The constitutional guaranty of equal protection of the laws does not require that all persons, however situated, shall have the same rights and be protected in doing the same things. . . . It forbids invidious discrimination, but doth not require identical treatment for all persons without recognition of differences in relevant circumstances." *Priest v. State*, Del.Supr., 227 A.2d 576, 579 (1967).

■ When neither a fundamental right nor a suspect class is involved, a legislative classification will be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest. *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). The present case involves neither a suspect class, such as race, alienage, national origin or sex, nor a fundamental right, since obscene materials are not protected by the First Amendment. Thus, this Court's review is limited to ". . . an examination of the statute to determine whether its subject matter involves a permissible and legitimate concern of the State and . . . whether the statute, the means to effect the end, is a reasonable tool for that purpose." *Household Finance Corporation v. Johnson*, Del. Super., 346 A.2d 177, 179–180 (1975).

In support of his equal protection argument, defendant relies on *Wheeler v. State*, Md.Ct.App., 281 Md. 593, 380 A.2d 1052 (1977), *cert. denied*, 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86 (1978). *Wheeler* involved a statutory classification which exempted from criminal liability certain employees involved in the commercial dissemination of obscene materials, while it imposed criminal liability on all other employees engaged in essentially the same conduct. The Court found no rational basis for distinguishing among employees engaged in essentially the same conduct, i. e., the commercial dissemination of obscene materials.

---

2. 11 *Del.C.* § 1362(2) provides:

"In any prosecution for obscenity it is an affirmative defense that dissemination was restricted to:

\* \* \* \* \* \*

(2) Noncommercial dissemination to personal associates of the accused who are known by the accused not to object to the receipt of such material."

11 *Del.C.* § 1362(2) distinguishes between individuals engaged in the commercial dissemination of obscene materials and those engaged in its noncommercial dissemination. Unlike the statute in *Wheeler*, 11 *Del.C.* § 1362(2) makes no distinction among individuals engaged in the commercial dissemination of obscenity.

■ Clearly, the State has a legitimate interest in regulating commerce in obscene material. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). To aid the State in that function, 11 *Del.C.* § 1362(2) provides a reasonable mechanism for setting apart those individuals engaged in purely private, noncommercial dissemination of such materials. *See* Commentary on the Delaware Criminal Code, § 1362, pp. 433–4.

■ Thus, the classification created by 11 *Del.C.* § 1362(2) is not "patently arbitrary", and defendant was not deprived of equal protection of the laws.

### IV

Defendant's next contention is that the requisite element of scienter was not charged in any of the indictments, not proven by the State at trial, nor correctly submitted to the jury in the Trial Court's instructions.

It appears that defendant was charged in each indictment with reckless conduct, in conformity with 11 *Del.C.* § 1361. The record also indicates that defendant possessed and sold the materials in issue during the ordinary course of his business, i. e., operation of his store, "Adult World", thus raising the statutory presumption that defendant had acted either knowingly or recklessly. *See* 11 *Del.C.* § 1363.[3] Furthermore, the Trial Court clearly instructed the jury as to the pertinent statutory provisions concerning knowing and reckless conduct.

Defendant now asserts that his criminal liability cannot be based upon reckless conduct. He contends that the State was required to charge and prove that defendant in fact knew the materials which he sold and possessed for sale were obscene, and that the Trial Court erred by not instructing accordingly.

In support of his argument, defendant cites *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) and *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). However, neither case supports the proposition that a defendant may not be held criminally liable absent proof that he actually knew the materials which he sold or possessed for sale were obscene. In *Smith* the Court invalidated an obscenity ordinance which imposed strict criminal liability without any element of scienter. The Court in *Mishkin* upheld a decision by the New York Court of Appeals which "authoritatively interpreted" its statute as requiring a defendant's awareness of the character of the materials. 86 S.Ct., at 964–965; *see also People v. Finkelstein*, N.Y.Ct.App., 9 N.Y.2d 342, 214 N.Y.S.2d 363, 174 N.E.2d 470 (1961).

Following *Smith* and *Mishkin*, the Court stated in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974):

"It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law." 94 S.Ct., at 2910–2911.

11 *Del.C.* § 231(c) defines the term "recklessly", as it is used in 11 *Del.C.* § 1361:

"A person acts recklessly with respect to an element of an offense *when he is aware of and consciously disregards a*

---

**3.** 11 *Del.C.* § 1363 provides:
"A person who disseminates or possesses obscene material in the course of his business is presumed to do so knowingly or recklessly."

*substantial and unjustifiable risk* that the element exists or will result from his conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (emphasis added)

"The definition requires . . . conscious disregard of a risk which other men in the actor's situation would have deemed too great for the conduct to continue . . . ." Commentary on the Delaware Criminal Code, § 231, p. 30.

■ In the present case, the "risk" for defendant was that the materials that he sold and possessed for sale may have been obscene. But in order for him to have been aware of and to have consciously disregarded that "risk", defendant necessarily must have been aware of the nature and content of those materials.

■ Defendant's requisite state of mind must be considered in light of the clear purpose of 11 *Del.C.* § 1361, i. e., prohibition of the commercial exploitation of obscenity. *See* Commentary on § 1361, p. 432.

"A bookseller would be guilty . . . under [§ 1361(1)] if he knowingly sells an obscene book, or one which he has reason to think may be obscene but fails to check. If he has no notice of obscenity (*e. g.*, where the cover and advertising indicate the book is serious literature and there is no mention of obscenity), he would not be guilty, even though he in fact sold an obscene book." Commentary on § 1361, p. 432.

■ We are satisfied that by defining recklessness in terms of defendant's awareness, the clear purpose of 11 *Del.C.* § 1361 is furthered and the requirements formulated by the Supreme Court of the United States in *Mishkin* and *Hamling* are met. *See State v. Manchester News Co.*, N.H.Supr., 387 A.2d 324 (1978), *app. dismissed*, 439 U.S. 949, 99 S.Ct. 343, 58 L.Ed.2d 340 (1978). Having raised the statutory presumption that defendant had acted knowingly or recklessly, the State clearly met its burden of proving defendant's requisite mental

state, and the Trial Court properly instructed the jury accordingly. Thus, defendant's contention must fail.

V

Defendant next contends that the State failed to introduce any evidence, and the Trial Court failed to properly instruct the jury, concerning the prurient appeal of the allegedly obscene materials. Some of the materials depicted such deviant sexual behavior as bestiality and pedophilia which, defendant argues, was directed toward members of certain deviant sexual groups. Absent any expert testimony introduced by the State which would tend to establish the prurient appeal of such material to those specific deviant sexual groups, the jury's determination of prurient appeal was mere speculation, unsupported by any credible evidence; thus, defendant's conviction cannot stand. In support of his argument, defendant cites *United States v. Klaw*, 2 Cir., 350 F.2d 155 (1965), in which the Court of Appeals held that expert testimony was necessary to establish the prurient appeal of certain sado-masochistic material.

The United States Supreme Court has never held that expert testimony is required when some of the allegedly obscene materials depict deviant sexual behavior. To the contrary, the Court has stated:

"This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 J. Wigmore, Evidence §§ 556, 559 (3d ed. 1940). No such assistance is needed by jurors in obscenity cases; indeed, the 'expert witness' practice employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. See *United States v. Groner*, 479 F.2d 577, 585–586 (CA5 1973); *id.*, at 587–588 (Ainsworth, J., concurring). 'Simply stated, hard core pornography . . . can and does speak for itself.' *United States v. Wild*, 422 F.2d 34, 36 (CA2 1970), cert.

denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971). We reserve judgment, however, on the extreme case, not presented here, where contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest. See *Mishkin v. New York*, 383 U.S. 502, 508–510, 86 S.Ct. 958, 963–964, 16 L.Ed.2d 56 (1966); *United States v. Klaw*, 350 F.2d 155, 167–168 (CA2 1965)." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 n.6, 93 S.Ct. 2628, 2634–2635 n.6, 37 L.Ed.2d 446 (1973).

■ The Supreme Court's reasoning is consistent with the concepts that prurient appeal is a question of fact for the jurors who evaluate the material in terms of "the average person, applying contemporary community standards" and that the materials themselves generally are "the best evidence of what they represent." *Miller, supra*, 93 S.Ct. at 2618; *Paris Adult Theatre I, supra*, 93 S.Ct. at 2634. Generally, then, the jury need only review the allegedly obscene materials in order to apply the "average person" standard; the need for expert testimony might arise only "when the prurient interest may be that of a deviant segment of society whose reactions are hardly a matter of common knowledge." *Klaw, supra*, 350 F.2d at 166.

■ At this point, we emphasize that prurient appeal and patent offensiveness are separate and distinct issues of fact for the jury, and that the prurient appeal of certain material does not necessarily follow from its patent offensiveness. In the present case, the materials in issue are clearly patently offensive. But patent offensiveness aside, we also must conclude that the materials are not so unusually bizarre or arcane as to transcend the realm of the jury's experience. Thus, absent any expert testimony, the materials themselves formed a sufficient basis from which the jury could reasonably have determined their prurient appeal. Furthermore, our review of the record reveals no error in the Trial Court's instructions to the jury concerning the prurient appeal of the materials in issue. We find no merit to defendant's contention.

## VI

■ Defendant next asserts that the Trial Court's unfamiliarity with obscenity law denied defendant his Sixth Amendment right to a fair trial. We find no merit in this contention which is unsupported by the record.

## VII

■ Finally, we address defendant's contention that the materials upon which his conviction was based are not obscene as a matter of law. He argues that the materials depicting naked children are not the type of hard core pornography subject to proscription by the State pursuant to *Miller, supra*. See *Hunt v. Keriakos*, 1 Cir., 428 F.2d 606, 608 (1970).

For the reasons stated in this Court's opinion in *Raymond Heartless, Inc. v. State*, Del.Supr., 401 A.2d 921 (1979), we reject this argument. Having reviewed the materials in issue, we find that they depict types of sexual conduct within the ambit of 11 *Del.C.* § 1364(2). The jury properly considered the issues of their patent offensiveness, prurient appeal, and literary, artistic, political or scientific value, and there is substantial evidence in the record to support the jury's determination that the materials in fact are obscene.

REVERSED in part; AFFIRMED in part.