**AMERICAN BOOKSELLERS ASSOCIATION, INC. et al., Plaintiffs,**

v.

**Steven SCHIFF, et al., Defendants.**

**Civ. 85–0966 BB.**

United States District Court, D. New Mexico.

Nov. 3, 1986.

Philip B. Davis, Legal Director, American Civil Liberties Union of N.M., Albuquerque, N.M., Daniel A. McKinnon, III, Attorney at Law, Albuquerque, N.M., ACLU–NM Cooperating Atty., Michael A. Bamberger, David Burger, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, Burton Joseph, Barsy, Joseph & Lichtenstein, Chicago, Ill., for plaintiffs.

Holly A. Hart, Asst. Attys. Gen., Office of the Attorney General, Santa Fe, N.M., for Paul Bardacke.

Stephen A. Slusher, Deputy Dist. Atty., Second Judicial Dist., Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION

BALDOCK, Circuit Judge, Assigned.

"[T]his is a case of the wicked fleeing where none pursue." *St. Martin's Press, Inc. v. Carey,* 605 F.2d 41, 45 & n. 3 (2d Cir.1979) (citing *Proverbs* 28:1). It ostensibly presents the question of whether the New Mexico law prohibiting certain retail display of sexually oriented material deemed harmful to minors is constitutional. The plaintiffs, various trade associations, a wholesaler [1] and two retailers of books and periodicals, represented by the American Civil Liberties Union and others, brought this action against the Bernalillo County district attorney and the New Mexico attorney general. The district attorney represented the defendants. Plaintiffs seek a declaratory judgment to establish that the law is unconstitutional, a permanent injunction enjoining its enforcement, and attorney's fees and costs. Plaintiffs and defendants entered into a comprehensive stipulation of facts concerning the law's effect on the distribution of books and periodicals. The case took less than a day's trial time. At the end of plaintiffs' case-in-chief, the defense rested. The court took the matter under advisement and now issues its opinion incorporating its findings of fact and conclusions of law.[2] Fed.R.Civ.P. 52(a).

---

1. Plaintiff Rio Grande News Co. Inc., an Albuquerque wholesale distributor of books and periodicals, sought voluntary dismissal from the suit at the close of the plaintiffs' case. That motion was granted.

2. The parties stipulated to several facts concerning the nature of the publishing industry, however, relatively few facts would be relevant because this is a challenge to the statute on its face based on the federal constitution. *Community Television of Utah v. Wilkinson,* 611 F.Supp. 1099, 1107 (D.Utah 1985) *aff'd.* 800 F.2d 989 (10th Cir.1986). Much of the evidence presented at the one day hearing of this matter was not relevant because the determination of whether the statute is unconstitutional on its face is primarily a question of law concerning adult access to sexually oriented material. *M.S. News Co. v. Casado,* 721 F.2d 1281, 1288 (10th Cir. 1983) (reasonable restriction on viewing sexually oriented material which is constitutionally protected as to adults does not offend the first amendment); *Upper Midwest Booksellers Ass'n v. City of Minneapolis,* 780 F.2d 1389, 1395 (8th Cir.1985). For example, plaintiffs invited the court to consider sixteen books which they suggest might be "harmful to minors" and within the scope of § 30–37–2.1. Plaintiffs' Trial Exhibits 1 & 2A–2D. In the absence of any enforcement action, let alone any determination by a district attorney that these books are "harmful to minors," these books are not relevant to show how the statute might be applied. To the contrary, the continued availability of these publications would tend to support the statute's constitutionality. *Upper Midwest Booksellers Ass'n v. City of Minneapolis,* 780 F.2d at 1395.

Evidence offered to show the economic effect of the statute on various plaintiffs likewise was not

## I. Introduction

In 1985, New Mexico enacted statutory provisions further regulating the retail display of sexually oriented material harmful to minors. The statute which accomplishes the additional regulation is divided into two subsections: subsection A concerns the display of books and magazines with sexually oriented covers, while subsection B concerns the display of sexually oriented books and magazines as a whole. A violation of the statute is classified as a petty misdemeanor.[3] N.M.Stat.Ann. § 30–37–7 (1985 Supp.). The recently enacted statute, N.M.Stat.Ann. § 30–37–2.1 (1985 Supp.), provides:

A. It is unlawful for any person, offering for sale in a retail establishment open to the general public any book, magazine or other printed material the cover of which depicts nudity, sado-masochistic abuse, sexual conduct or sexual excitement and which is harmful to minors, to knowingly exhibit that book, magazine or material in that establishment in such a way that it is on open display to, or within the convenient reach of, minors who may frequent the retail establishment. Such books, magazines or printed materials may be displayed behind an opaque covering which conceals the depiction of nudity, sado-masochistic abuse, sexual conduct or sexual excitement, provided that those books, magazines or printed materials are not within the convenient reach of minors who may frequent the retail establishment.

B. It is unlawful for any person, offering for sale in a retail establishment open to the general public any book, magazine or other printed material the content of which exploits, is devoted to or is principally made up of descriptions or depictions of nudity, sado-macochistic abuse, sexual conduct or sexual excitement and which are harmful to minors, to knowingly exhibit that book, magazine or material in that establishment in such a way that it is within the convenient reach of minors who may frequent the retail establishment.

This provision is part of a statutory design providing for comprehensive regulation of sexually oriented material harmful to minors. *See* N.M.Stat.Ann. art. 37 (1980 Repl.Pamp. & 1985 Supp.).

 Plaintiffs challenge § 30–37–2.1 claiming it is violative of rights guaranteed under the first and fourteenth amendments of the United States Constitution. They claim that it imposes severe restrictions on the availability, display and distribution of constitutionally protected non-obscene but sexually oriented materials to both minors and adults. *See American Booksellers Association, Inc. v. Virginia,* 792 F.2d 1261, *modified,* 801 F.2d 691 (4th Cir.1986). Essentially, plaintiffs argue the statute is unconstitutional because it is vague, overbroad, and imposes a prior restraint. Defendants reject these claims and contend

relevant to resolving the case on the merits. In the words of Mr. Justice Powell concerning a zoning ordinance restricting adult movie theaters:

The inquiry for First Amendment purposes is not concerned with economic impact; rather it looks only to the effect of this ordinance upon freedom of expression. This prompts essentially two inquiries: (i) Does the ordinance impose any content regulation on the creators of adult movies or their ability to make them available to whom they desire, and (ii) does it restrict in any significant way the viewing of those movies by those who desire to see them?

*Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 78, 96 S.Ct. 2440, 2456, 49 L.Ed.2d 310 (1976) (Powell, J. concurring). The primary

first amendment concern is to "maintain free access of the public to the expression." *Id.* at 77, 96 S.Ct. at 2455. Justice Powell's views on the significance of economic impact were adopted by the Court in *City of Renton v. Playtime Theatres, Inc.,* —— U.S. ——, 106 S.Ct. 925, 933, 89 L.Ed.2d 29 (1986). *See also International Food & Beverage Systems v. City of Fort Lauderdale,* 794 F.2d 1520, 1526 (11th Cir.1986) ("[T]he first amendment does not guarantee anyone a profit."); *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1214 (5th Cir.1982).

**3.** The penalty for a petty misdemeanor is up to six months imprisonment for a definite term in the county jail or the payment of a fine of up to $500 or both. N.M.Stat.Ann. § 31–19–1 (1985 Supp.)

that the statute does not constitute an unreasonable restriction on adult access to sexually oriented material. They submit that the statute is readily understandable, and capable of constitutionally permissible application because it proscribes only the display of sexually oriented materials which do not enjoy constitutional protection as to minors. *See Upper Midwest Booksellers Ass'n v. City of Minneapolis,* 780 F.2d 1389 (8th Cir.1985); *M.S. News v. Casado,* 721 F.2d 1281 (10th Cir.1983).[4] Still, defendants urge the court to abstain from exercising jurisdiction on the matter pending construction of the statute by the New Mexico state courts, implicitly relying on *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), *rev'g,* 33 F.Supp. 675 (W.D.Tex. 1940).[5]

**4.** Recently, two circuits have upheld ordinances which restrict not only the distribution to minors of sexually oriented material which is obscene as to them, but also the display of such material. The restricted material was not necessarily obscene as to adults, yet the restrictions were upheld. In *M.S. News Co. v. Casado,* 721 F.2d 1281, the Tenth Circuit viewed such restrictions as time, place and manner regulations. *See City of Renton v. Playtime Theatres, Inc.,* 106 S.Ct. at 930 (a valid time, place and manner restriction need only further a substantial government interest and allow for reasonable alternative avenues of communication); *see also Young v. American Mini Theatres, Inc.,* 427 U.S. 50 & 73–85, 96 S.Ct. 2440, 2453–59, 49 L.Ed.2d 310 (plurality opinion and Powell, J., concurring). The ordinance at issue allowed the display of sexually oriented material harmful to minors in display racks which concealed the lower two-thirds of the material from view. The court rejected the argument that the ordinance was overbroad because it restricted the access of adults and older minors to constitutionally protected publications:

> It is true that compliance with the ordinance will to some degree restrict the viewing by adults of materials which are, as to adults, constitutionally protected. However, the restriction is reasonable and does not offend the First Amendment.

721 F.2d at 1288. Although the ordinance was a content-based regulation, it did not suppress or greatly restrict access to protected speech and was "justified by the substantial governmental interest in protecting minors from exposure to harmful material." *Id.*

Similarly, the Eighth Circuit has considered an ordinance prohibiting the display of sexually oriented material harmful to minors unless the material is in a sealed wrapper. *Upper Midwest Booksellers Ass'n v. City of Minneapolis,* 780 F.2d 1389. The challenged ordinance also required that any cover, which standing alone would be harmful to minors, must be blocked from view by an opaque cover if minors would be able to view it otherwise. Appellants argued that the sexually oriented material had to be considered as a whole and that the ordinance was overbroad because that part regulating only the covers did not consider the material as a whole. The court of appeals rejected this argument and concluded that "the 'taken as a whole' requirement has no application outside the context of an attempt totally to suppress obscene material or criminally to prosecute someone for the dissemination of that material." 780 F.2d at 1393. Because adults still may review and purchase the material, the "taken as a whole" requirement was not applicable to the display regulations.

The Eighth Circuit held that the ordinance was a reasonable time, place and manner regulation because it furthered significant governmental interests and allowed for reasonable alternative methods of communication. The ordinance sought to promote the well-being of youth and support parental authority within the household but did not prohibit adults from viewing and purchasing sexually oriented material. The court stated:

> Any burden here is the result of the permissible regulation of material that is obscene as to minors. The restriction in relation to adults is merely an incidental effect of the permissible regulation and is minimal in its impact. Adults are still free to request a copy of restricted material to view from a merchant or to peruse the material in adults only bookstores or in segregated sections of ordinary retail establishments. More significantly, adults are still able to view any of the material in a free and unfettered fashion by purchasing it. The continued availability of these materials to adults for purchase under the ordinance weighs strongly in favor of the ordinance's constitutionality.

780 F.2d at 1395. The Fourth Circuit in *American Booksellers Ass'n, Inc. v. Virginia,* 792 F.2d at 1266, *modified,* 801 F.2d 691, appears to have reached the opposite conclusion in determining that alternate display methods for sexually oriented material would be ineffective or unduly burdensome on first amendment rights.

**5.** In *Pullman,* the Court determined that a three judge district court should have abstained from deciding that an order of the Texas Railroad Commission was unauthorized by Texas law and granting immediate injunctive relief. The order, which essentially required white conductors to operate Pullman cars, was challenged on state statutory and federal constitutional grounds. The district court resolved the case on state law grounds by deciding that the order

## II. The Statutes

Before considering the issues, it is essential to review the New Mexico statutory design for the regulation of sexually oriented materials harmful to minors. The 1985 statute is but a part of a statutory plan adopted in 1973. Those portions of the plan adopted in 1973 not only define terms used in the 1985 statute but also control its application. 1973 N.M.Laws c. 257. Since 1973, New Mexico has regulated the distribution, delivery, *display* and sale of sexually oriented material harmful to minors under § 30–37–2, a statute obviously related to the one in question.[6] Plaintiffs have not challenged § 30–37–2 which by its terms applies to the display of sexually oriented materials.

Both § 30–37–2, enacted in 1973, and § 30–37–2.1, enacted in 1985, prohibit the display to minors of sexually oriented material that is harmful to minors. A minor

---

was beyond the authority of the Commission. Recognizing that the Texas Supreme Court had the last word on the statutory authority of the Commission, the Supreme Court required the federal district court to retain jurisdiction of the case but to abstain from determining the merits pending a state court determination on the state law issue. Abstention was warranted to "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Pullman*, 312 U.S. at 500, 61 S.Ct. at 645. Under the *Pullman* abstention doctrine, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 874, 43 L.Ed.2d 32 (1975). Abstention is particularly appropriate when "the federal constitutional challenge depends upon the construction of a state statute, the meaning of which is unclear under state law." *Id.* at 84, 95 S.Ct. at 875. The state statute should be "obviously susceptible" to a limiting construction. *Zwickler v. Koota*, 389 U.S. 241, 251 n. 14, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967). If state court construction would likely avoid the need for a federal constitutional decision or materially change the nature of the federal claim, abstention is warranted. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 305–312, 99 S.Ct. 2301, 2309–16, 60 L.Ed.2d 895 (1979); *Boehning v. Indiana State Employees Association, Inc.*, 423 U.S. 6, 7–8, 96 S.Ct. 168, 169–70, 46 L.Ed.2d 148 (1975); *Harrison v. N.A.A.C.P.*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959). It is unnecessary to consider whether *Pullman* abstention would be appropriate in this case in view of the court's decision on the issue of jurisdiction. *See* point IV, *infra*.
Defendants have also cited *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971) in support of their abstention argument. They suggest that any inhibition or chilling effect felt by the plaintiffs due to the enactment of § 30–37–2.1 does not require the court to exercise jurisdiction. In *Younger*, the Court held that imaginary or speculative fears of criminal

prosecution are an inadequate basis for federal equity jurisdiction where injunctive relief is sought to halt state criminal proceedings. 401 U.S. at 42, 91 S.Ct. at 749. The Court also held that a federal court, absent bad faith, harassment or other extraordinary circumstances, will not interfere with an existing state criminal prosecution notwithstanding a federal claim that the underlying state criminal statute is unconstitutional on its face. 401 U.S. at 54, 91 S.Ct. at 755. This rule has its origins in principles of equity, comity and federalism. 401 U.S. at 43–44, 91 S.Ct. at 750. *Younger* abstention applies only where there is a state proceeding initiated before a federal court considers the merits of the federal claim. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984); *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975). There are no ongoing state proceedings related to this case, thus, *Younger* abstention would not apply.

6. The 1973 statute, N.M.Stat.Ann. § 30–37–2 (1980 Rep.Pamp.), provides:
 It is unlawful for a person to knowingly sell, deliver, distribute, display for sale or provide to a minor or knowingly possess with intent to sell, deliver, distribute, display for sale or provide to a minor:
 A. any picture, photograph, drawing, sculpture, motion picture film or similar visual representation or image of a person or portion of the human body, or any replica, article or device having the appearance of either male or female genitals which depicts nudity, sexual conduct, sexual excitement or sado-masochistic abuse and which is harmful to minors; or
 B. any book, pamphlet, magazine, printed matter however produced or sound recording which contains any matter enumerated in Subsection A of this section or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse and which, taken as a whole, is harmful to minors.
A violation of this statute also is classified as a petty misdemeanor. N.M.Stat.Ann. § 30–37–7 (1985 Supp.).

is an unmarried person under the age of 18. N.M.Stat.Ann. § 30–37–1(A) (1980 Rep.Pamp.). The term "harmful to minors" is defined as:

... that quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement or sado-masochistic abuse, when it:

(1) predominantly appeals to the prurient, shameful or morbid interest of minors; and

(2) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and

(3) is utterly without redeeming social importance for minors; ...

N.M.Stat.Ann. § 30–37–1(F) (1980 Rep. Pamp.). The above obscenity test is from *Memoirs v. Massachusetts,* 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966) (plurality opinion); the definitional section of art. 37 is patterned on a New York law which prohibited the sale of certain sexually oriented material to minors. *See Ginsberg v. New York,* 390 U.S. 629, 645–647, 88 S.Ct. 1274, 1283–84, 20 L.Ed.2d 195 (1968). Indeed, much of the original part of art. 37 is drawn from the New York

statute upheld in *Ginsberg. Compare* N.M.Stat.Ann. §§ 30–37–2, 30–37–3 *with Ginsberg,* 390 U.S. at 646–47, 88 S.Ct. at 1284.

There are several steps which will occur prior to criminal enforcement of the provisions concerning sexually oriented materials harmful to minors. The district attorney of the county where a potential offense might occur must make a determination that a certain matter or performance is harmful to minors, a defendant must have actual or constructive notice of that determination and any person aggrieved by such a determination may commence a civil action challenging its correctness.[7] So that there will be uniform application of the state plan regulating sexually oriented material harmful to minors, the state has preempted county and municipal regulation of the field. N.M.Stat.Ann. § 30–37–8 (1980 Rep.Pamp.); 1973–74 Op.Att'y Gen. No. 73–54.

Once the district attorney has made a valid determination that a matter or performance is harmful to minors and an offense has occurred, there are several statutory defenses.[8] If a defendant violates

---

**7.** N.M.Stat.Ann. § 30–37–4 (1980 Rep.Pamp.) provides:

A. No prosecution based under this act [30–37–1 to 30–37–8 NMSA 1978] shall be commenced unless the district attorney of the county in which the offense occurs shall have previously determined that the matter or performance is harmful to minors and the defendant shall have received actual or constructive notice of such determination. Persons shall be presumed to have constructive notice of such determination on the fifth business day following publication of a notice of such determination in a newspaper of general circulation in the county in which the prosecution takes place.

B. Any person adversely affected by such determination may, at any time within thirty days after such notice is given, seek a judicial determination of its correctness. The court shall, unless otherwise agreed by the parties, render judgment not later than two court days following trial. Filing of an action under this section shall stay prosecution until a judicial determination is rendered, but no appeal shall have such effect unless ordered by the trial court.

C. No criminal action shall be commenced in any other judicial district within this state

during the pendency of the civil action authorized by Subsection B of Section 4 [this section] regarding the same matter, exhibition or performance.

**8.** N.M.Stat.Ann. § 30–37–5 (1980 Rep.Pamp.) provides:

No person shall be guilty of violating the provisions of this act [30–37–1 to 30–37–8 NMSA 1978]:

A. where such person had reasonable cause to believe that the minor involved had reached his eighteenth birthday, and such minor exhibited to such person a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that such minor had reached his eighteenth birthday; or

B. if the minor was accompanied by his parent or guardian, or the parent or guardian has in writing waived the application of this act either generally or with reference to the particular transaction; or

C. where such person had reasonable cause to believe that the person was the parent or guardian of the minor; or

D. where such person is a bonafide school, museum or public library, or is acting in his

these provisions concerning sexually oriented materials, it is a complete defense that the defendant had a reasonable belief, supported by incorrect identification, that the minor involved was over 18. N.M.Stat. Ann. § 30–37–5(A) (1980 Rep.Pamp.). A parent or guardian may accompany a minor or waive application of these provisions concerning sexually oriented materials harmful to minors, and there will not be a violation. N.M.Stat.Ann. § 30–37–5(B). Generally, there will not be a violation if a school, museum or public library is involved. N.M.Stat.Ann. § 30–37–5(D).

Defendants recognize the similarity between the newer § 30–37–2.1 and the older § 30–37–2. "In a very real sense, the Act [§ 30–37–2.1] does not proscribe conduct not already prohibited in Section 30–37–2; what it does do is more narrowly and specifically describe the proscribed conduct." Defendants' Trial Memorandum Brief at 4. Section 30–37–2.1 is narrower than § 30–37–2 in the sense that § 30–37–2.1 applies only to sexually oriented material in retail establishments. A comparison of these two provisions shows other important differences, also.

As stated, § 30–37–2.1 contains two subsections: subsection A concerns the display of covers of books and magazines while subsection B concerns the display of books and magazines, the contents of which are harmful to minors. Subsection A of § 30–37–2.1 makes it unlawful to knowingly exhibit in a retail establishment a book or magazine, the cover of which depicts sexually oriented matter harmful to minors, in such a way that it is on open display or within the convenient reach of minors who may frequent the retail establishment. Subsection A then provides that these types of books or magazines may be displayed behind an opaque covering which conceals the sexually oriented matter on the cover, so long as the books and maga-

zines are not within the convenient reach of minors who may frequent the retail establishment. Subsection B of § 30–37–2.1 makes it unlawful to knowingly exhibit books and magazines, with contents that are principally sexually oriented and harmful to minors, in such a way that they are within the convenient reach of minors who may frequent the retail establishment.

Similar conduct is proscribed by N.M. Stat.Ann. § 30–37–2(B) [9] which makes it unlawful to knowingly display for sale to a minor any book or magazine containing: 1) a picture, photograph, or drawing which depicts sexually oriented matter or 2) sexually oriented verbal descriptions or narrative accounts, when such book or magazine, taken as a whole is harmful to minors. Thus, in § 30–37–2(B) it is unlawful "to knowingly ... display for sale ... to a minor" certain sexually oriented material when that material, taken as a whole, is harmful to minors, while in § 30–37–2.1(A) it is unlawful "to knowingly exhibit" material with a sexually oriented cover "in such a way that it is on open display to, or within the convenient reach of, minors who may frequent the retail establishment." One relevant difference between § 30–37–2(B) and the more recent § 30–37–2.1(A) seems to be that in § 30–37–2.1(A) the book or magazine is not considered as a whole, rather just the cover is considered. Section 30–37–2.1(A) also contains an additional proscription against books and magazines with sexually oriented covers being placed within the convenient reach of minors. Finally, § 30–37–2.1(A) also establishes a defense if the book or magazine is displayed behind an opaque covering not within the convenient reach of minors.

Under § 30–37–2.1(B) it is unlawful "to knowingly exhibit" books and magazines, the contents of which are principally made up of sexually oriented matter harmful to

capacity as an employee of such organization, or as a retail outlet affiliated with and serving the educational purposes of such organization.

**9.** Subsection B of N.M.Stat.Ann. § 30–37–2 incorporates subsection A of that same section.

Subsection B applies to books and magazines, and contains a limitation that such book or magazine be harmful to minors when taken as a whole. Subsection A does not contain the "taken as a whole" limitation.

minors "in such a way that it is within the convenient reach of minors who may frequent the retail establishment." The difference between § 30–37–2(B) and § 30–37–2.1(B) seems to be that the newer statute uses different language to describe the "taken as a whole" requirement ("content of which exploits, is devoted to or is principally made up of") and contains an additional proscription against books and magazines with sexually oriented contents being placed within the convenient reach of minors.

In New Mexico, where both a general and specific statute cover the same offense, the state must prosecute under the more specific statute. *State v. Cuevas*, 94 N.M. 792, 793–98, 617 P.2d 1307, 1308–09 (N.M.1980); *State v. Lujan*, 76 N.M. 111, 114, 412 P.2d 405, 408 (N.M.1966); *State v. Reams*, 98 N.M. 372, 375, 648 P.2d 1185, 1188 (N.M.Ct.App.1981), *rev'd on other grounds*, 98 N.M. 215, 647 P.2d 417 (N.M. 1982). Thus, § 30–37–2.1 could apply to certain retailers if it becomes operational.

### III. The Issues

Plaintiffs claim that § 30–37–2.1 is void for vagueness because the meaning of the following terms used in the statute is unclear:

1. "open display"
2. "convenient reach"
3. "exploits"
4. "devoted to"
5. "principally made up of."

Defendants suggest that the phrase "convenient reach" is susceptible of more than one meaning as applied and that it is unclear whether § 30–37–2.1(B) satisfies the requirement that material be "taken as a whole" in order to be obscene by referring to "the content of which exploits, is devot-

ed to or is principally made up of" sexually oriented material harmful to minors.

The parties did not raise the significant issue that § 30–37–2.1 may be unconstitutional because it depends upon an older definition of obscenity which has been subsequently modified by the Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). A review of plaintiffs' complaint, however, makes it apparent that this is a threshold issue which substantially affects the nature of the claims asserted. Count I alleges that the statute is overbroad because it restricts the access of minors to sexually oriented material that is not obscene as to minors. Count II alleges that the statute is overbroad because it restricts the access of adults to sexually oriented material which is not obscene. Count III alleges that the statute is a prior restraint on protected speech because merchants may remove or exclude minors from constitutionally protected material. Count IV, although containing theories covered in prior counts, also alleges that the statute offends due process by failing to provide prompt review of an application of the statute. It also alleges that the five terms listed above are both vague and overbroad. Resolution of the plaintiffs' complaint depends upon determining whether the statute proscribes obscenity in a constitutional manner.

The term "harmful to minors" as used in the statute incorporates the concept of variable obscenity,[10] but with a definition of obscenity which does not conform to that found in *Miller v. California*, 413 U.S. at 24, 93 S.Ct. at 2614. The plaintiffs' federal claims could be altered by state statutory construction of the term "harmful to minors," for that term controls what sexually oriented material is considered obscene as

**10.** The Supreme Court has approved prohibiting a minor's access to sexually oriented magazines, even though those magazines were not obscene as to adults but were as to minors. *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). This has become known as the concept of variable obscenity. Minors have a more restricted right than adults to sexually oriented material. It is permissible to deter-

mine what minors may view with reference to prevailing standards in the adult community with respect to what is suitable for minors. *Id.* at 635, 88 S.Ct. at 1278. Implicit in a test relying on adult perceptions to determine whether material is suitable for minors is the recognition that most sexually oriented material is aimed primarily at sexually mature adults. *Id.* at 635 n. 4, 88 S.Ct. at 1278 n. 4.

to minors. The most recent formulation of obscenity establishes a three-part test for determining whether a work is obscene. Under *Miller v. California*, 413 U.S. at 24, 93 S.Ct. at 2614, expression is beyond the protection of the first amendment if it: (1) taken as a whole, appeals to the prurient interest; (2) depicts or describes specified sexual conduct in a patently offensive way, and (3) taken as a whole, lacks serious literary, artistic, political or scientific value. As previously noted, the obscenity test in § 30–37–1(F) is from an earlier case, *Memoirs v. Massachusetts*, 383 U.S. at 418, 86 S.Ct. at 977, and proscribes that which is obscene for minors. New Mexico's definition of obscenity contained in § 30–37–1(F) was approved March 30, 1973, and became law ninety days after the legislature adjourned on March 17, 1973. N.M. Const. art IV § 23. *Miller v. California* was decided June 21, 1973, thus the New Mexico statute predates the *Miller* decision.

In *Miller*, the Court indicated that the reformulation of the obscenity standard did not automatically mean that existing state statutes on the subject were invalid. In confining permissible state regulation of obscenity to sexual conduct, the "conduct must be specifically defined by the applicable state law as written or authoritatively construed." *Miller v. California*, 413 U.S. at 24, 93 S.Ct. at 2614. Such an authoritative construction of an obscenity statute which predates *Miller* could occur before or after the *Miller* decision. *Miller v. California*, 413 U.S. at 24 n. 6, 93 S.Ct. at 2615 n. 6. The Supreme Court has endorsed the principle of construing statutes regulating obscenity to conform to constitutional requirements whenever possible. *United States v. 12 200–Ft. Reels of Super 8MM. Film*, 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 2670 n. 7, 37 L.Ed.2d 500 (1973); *see also Hamling v. United States*, 418 U.S. 87, 110–17, 94 S.Ct. 2887, 2903–07, 41 L.Ed.2d 590 (1974) (federal statute prohibiting mailing of obscene material construed to contain *Miller* limitations). But it is the state courts, not the federal courts, which may authoritatively construe state statutes.[11] *United States v. 12 200–Ft. Reels of Super 8MM. Film*, 413 U.S. at 130 n. 7, 93 S.Ct. 2670 n. 7.

The majority of state courts considering the issue have either determined that their existing statutes conformed to *Miller* requirements or could be judicially narrowed or reconstructed.[12] A minority of state

---

**11.** This is not a case where the challenged statute has been construed by a New Mexico court, nor is it one where similar statutes have been so construed. *See De Salvo v. Codd*, 386 F.Supp. 1293, 1297 (S.D.N.Y.1974) (state court decisions on related statutes provided federal court sufficient guidance to decide the merits of whether civil obscenity statute was unconstitutional). New Mexico does not have a general obscenity statute, nor do the cases concerning the application of local ordinances provide sufficient guidance on the issue of whether the New Mexico courts would construe the term "harmful to minors" to conform with *Miller* requirements. *See State v. Johnson.* 104 N.M. 430, 722 P.2d 681 (Ct.App.), *cert. denied*, 104 N.M. 378, 721 P.2d 1309 (1986); *City of Albuquerque v. Butt*, 83 N.M. 463, 493 P.2d 773 (Ct.App.1972).

**12.** *See Pierce v. State*, 292 Ala. 473, 296 So.2d 218, 221–22 (1972), *cert. denied*, 419 U.S. 1130, 95 S.Ct. 816, 42 L.Ed.2d 830 (1975); *Gibbs v. State*, 255 Ark. 997, 504 S.W.2d 719, 724–26 (1974); *People v. Enskat*, 33 Cal.App.3d 900, 109 Cal.Rptr. 433 (1973), *cert. denied*, 418 U.S. 937, 94 S.Ct. 3225, 41 L.Ed.2d 1172 (1974); *State v. Papp*, 298 So.2d 374, 376 (1974); *Rhodes v.* *State*, 283 So.2d 351, 354–59 (1973); *Slaton v. Paris Adult Theatre I*, 231 Ga. 312, 201 S.E.2d 456, 458–60 (1973), *cert. denied*, 418 U.S. 939, 94 S.Ct. 3227, 41 L.Ed.2d 1173 (1974); *State v. A Motion Picture Entitled "The Bet"*, 219 Kan. 64, 547 P.2d 760, 764–68 (1976); *Hall v. Commonwealth,* 505 S.W.2d 166, 167–68 (1974); *Magnum v. Maryland State Board of Censors*, 273 Md. 176, 328 A.2d 283, 286–89 (1974); *People v. Neumayer*, 405 Mich. 341, 275 N.W.2d 230, 232–40 (1979); *State ex rel. Wampler v. Bird*, 499 S.W.2d 780, 783–84 (1973); *State v. Welke*, 298 Minn. 402, 216 N.W.2d 641, 644–49 (1974); *State v. American Theater Corp.*, 194 Neb. 84, 230 N.W.2d 209, 211–12 (1975); *State v. Little Art Corp.*, 191 Neb. 448, 215 N.W.2d 853, 854–56 (1974); *State v. Harding*, 114 N.H. 335, 320 A.2d 646, 649–52 (1974); *State v. De Santis*, 65 N.J. 462, 323 A.2d 489, 490–95 (1974); *People v. Heller*, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805, 808–17 (1973), *cert. denied*, 418 U.S. 944, 94 S.Ct. 3231, 41 L.Ed.2d 1175 (1974); *State v. Bryant*, 203 S.E.2d 27, 29–36, *cert. denied*, 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *State v. Horn*, 285 N.C. 27, 203 S.E.2d 36, *cert. denied*, 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *State ex rel. Keating v. A Motion*

courts have been unwilling to judicially modify obscenity statutes to conform with *Miller* because to do so would be to assume a legislative function and rewrite the statutes under the guise of judicial interpretation.[13] Two state courts judicially modified state obscenity statutes to conform with *Miller* and later determined that the modifications were constitutionally deficient.[14] In the context of the New Mexico statute, this decision can only be made authoritatively by the New Mexico courts. *See Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (not within federal court power to construe and narrow state laws). "State courts are the ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975); *Imel v. United States,* 523 F.2d 853, 857 (10th Cir.1975). This issue need not be decided here because the court *sua sponte* raises the issue of jurisdiction. *See* Pre-Trial Order § 1 (stipulated jurisdiction).

## IV. Jurisdiction

The case or controversy requirement of article III of the United States Constitution limits the federal courts to deciding controversies which are definite and concrete involving parties with adverse legal interests. *Muskrat v. United States,* 219 U.S. 346, 361, 31 S.Ct. 250, 255, 55 L.Ed.2d 246 (1911). The federal courts were never intended to render advisory opinions based upon a hypothetical set of facts. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The controversy must be not only real and substantial, but also admit of specific relief rather than an advisory opinion. *Id.* Normally, only when a statute is brought into actual or threatened operation and is alleged to directly affect the rights of a party will the case or controversy requirement be satisfied. *Massachusetts v. Mellon,* 262 U.S. 447, 484, 488, 43 S.Ct. 597, 600, 601, 67 L.Ed. 1078 (1923).

In addition to constitutional considerations, there are prudential considerations which limit federal jurisdiction. Standing concerns whether there is a proper plaintiff before the court to raise the issues sought to be litigated. *Linda R.S. v. Richard D.,* 410 U.S. 614, 616, 93 S.Ct. 1146, 1147, 35 L.Ed.2d 536 (1973). A plaintiff must allege a sufficiently "personal stake in the outcome" to provide for the "concrete adverseness which sharpens the presentation of [constitutional] issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Normally, a party must assert his own rights, rather than the rights of third parties. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204, 2205, 45 L.Ed.2d 343 (1975). There must be actual or threatened injury in fact rather than a generalized grievance. *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 216–27, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706 (1974). And there must be a connection between the claimed injury and the challenged conduct so that the

Picture Film Entitled "Vixen", 35 Ohio St.2d 215, 301 N.E.2d 880, 881–82 (1973), (cited in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 596 n. 4, 95 S.Ct. 1202, 1204 n. 4, 43 L.Ed.2d 482 (1975)); *State ex rel. Field v. Hess,* 540 P.2d 1165, 1168–69 (1975); *Price v. Commonwealth,* 214 Va. 490, 201 S.E.2d 798, 800–01 (Va.1974), *cert. denied,* 419 U.S. 902, 95 S.Ct. 186, 42 L.Ed.2d 148 (1974). For a review of how states had reacted to *Miller v. California* as of 1975, see Note, Community Standards, Class Actions, and Obscenity Under *Miller v. California,* 88 Harv.L.R. 1838 (1975).

13. *People v. Tabron,* 190 Colo. 149, 544 P.2d 372, 379–80 (Colo.1976); *Mohney v. State,* 261 Ind. 56, 263 Ind. 56, 300 N.E.2d 66 (1973); *Mohney v. State,* 157 Ind.App. 454, 300 N.E.2d 678 (Ct.App. 1973); *State v. Wedelstedt,* 213 N.W.2d 652, 656–67 (1973); *State v. Shreveport News Agency, Inc.,* 287 So.2d 464, 469–70 (1974); *Commonwealth v. Horton,* 365 Mass. 164, 310 N.E.2d 316, 319–22 (1974); *Commonwealth v. McDonald,* 347 A.2d 290, 293–99 (1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Art Theater Guild, Inc. v. State,* 510 S.W.2d 258, 261 (1974).

14. *State v. J-R Distributors, Inc.,* 82 Wash. 584, 512 P.2d 1049, 1060–61 (1973), *cert. denied,* 418 U.S. 949, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (1974), *modified, State v. Regan,* 94 Wash.2d 47, 640 P.2d 725, 728–29 (1982); *State ex rel. Chobot v. Circuit Court,* 49 Mich.App. 574, 212 N.W.2d 690 (1973), *on motion for rehearing,* 49 Mich.App. 574, 212 N.W.2d 701 (1974), *overruled, State v. Princess Cinema of Milwaukee, Inc.,* 96 Wis.2d 646, 292 N.W.2d 807, 814–15 (1980).

relief sought would redress the claimed injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 78–80, 98 S.Ct. 2620, 2633–34, 57 L.Ed.2d 595 (1978).

In first amendment cases, standing requirements may be somewhat relaxed, particularly the requirement that a party may assert only his own rights. *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984). The possibility that a challenged statute may deter others from engaging in expression protected by the first amendment is sufficient reason to allow a party to raise the claims which others might make. *Id.; Broadrick v. Oklahoma,* 413 U.S. 601, 610–13, 93 S.Ct. 2908, 2914–16, 37 L.Ed.2d 830 (1973).

Whether a party has standing depends upon "the nature and source of the claim asserted" rather than on the merits of the complaint. *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2205. In determining the nature and source of the complaint, the court may also look at various uncontroverted facts. The plaintiffs in this action are various trade associations representing merchants, publishers, wholesalers and distributors of books and periodicals, and two retail bookstores. They assert their own rights by claiming that the new statute, § 30–37–2.1, infringes upon their right to display and sell non-obscene sexually oriented material to both adults and minors. They assert the rights of third parties by also claiming that the statute infringes upon the rights of adults and minors to view and purchase such material.[15]

For jurisdictional purposes, a claim of economic injury based on actual or threatened operation of a statute is some-

times sufficient to satisfy the requirement that injury in fact be alleged. *Ass'n of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *but see* n. 2, *supra.* The plaintiffs' claims of deprivation of first amendment rights, notwithstanding the lack of enforcement of the statute, may satisfy the injury in fact requirement provided that there is some likelihood that the statute may be enforced. Assuming the statute were placed into operation, there is no requirement that a retailer risk prosecution by failing to comply with the statute as implemented. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *cf. Ass'n of Community Organizations for Reform Now (ACORN) v. Municipality of Golden, Colorado,* 744 F.2d 739, 744 (10th Cir. 1984). What is required is that the fear of state prosecution not be "imaginary or speculative." *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). The alleged deterrent effect of the statute must be "grounded in a realistic fear of prosecution." *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 1753, 6 L.Ed.2d 989 (1961).

Applying the above principles, there are several reasons why an exercise of federal jurisdiction in this case is questionable. First, a prerequisite to enforcement of § 30–37–2.1 is a determination by the district attorney that sexually oriented material is harmful to minors. N.M.Stat. Ann. § 30–37–4(A) (1980 Rep.Pamp.). Another prerequisite to enforcement is that the district attorney provide actual or constructive notice of such a determination *before* any prosecution may be commenced. *Id.* No such determination has been made or notice given concerning any published material of concern to the plaintiffs; for that matter, the district attorney has yet to

---

**15.** If it was a party, the American Civil Liberties Union of New Mexico would have standing to assert the rights of its members to view and purchase such material "if any one of its members suffers or is threatened with injuries that would create a justiciable case." *J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482, 485 n. 2 (9th Cir.1984). The group is providing representation, but it is not a party. Were there jurisdiction, the present parties would have standing to assert the first amendment rights of retail purchasers. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 2890 n. 11, 69 L.Ed.2d 800 (1981).

make such a determination concerning any matter or performance within the scope of the statute. There is no reasonable fear of prosecution until such a determination has been made, notice has been given and any requested judicial review has occurred at the state district court level.[16] This unique feature of the statute distinguishes this case from others involving similar display provisions where the plaintiffs had standing to challenge the provisions. *See American Booksellers Ass'n, Inc. v. Virginia*, 792 F.2d at 1263–64, *modified*, 801 F.2d 691 (4th Cir.1986); *Upper Midwest Booksellers v. City of Minneapolis*, 780 F.2d at 1391 n. 5; *M.S. News Co. v. Casado*, 721 F.2d 1281. Where a statute has never been enforced, injury must be "present and very real, not a mere possibility in the remote future." *Pierce v. Society of Sisters*, 268 U.S. 510, 536, 45 S.Ct. 571, 574, 69 L.Ed. 1070 (1925). That type of injury simply is not present in this case.

This case is similar to *St. Martin's Press, Inc. v. Carey*, 605 F.2d 41 (2d Cir.1979), where plaintiffs sought declaratory and injunctive relief against a New York statute prohibiting a person from knowingly promoting a sexual performance that includes sexual conduct by a child under 16. Like in the present case, plaintiffs proffered sexually oriented material arguably within the reach of the statute. The position taken by the defendant New York County District Attorney in the district court was substantially similar to the position taken by the defendants in this case:

> "I'm frankly a little at a loss to understand why it is that the District Attorney of New York County is here before your Honor. I know procedurally we were served and there is a lawsuit and we are here but it's a suit to enjoin us from doing something which we have never done in the past, which we have not threatened to do and which we don't con-

template doing and more than that I can't say."

605 F.2d at 45. The panel majority noted that the record was devoid of any indication that the state intended to prosecute the plaintiffs, thus the case did not involve a case or controversy justifying federal court intervention. Plaintiffs' complaint was dismissed for lack of jurisdiction. The same result would seem even more indicated in this case because the statutory steps which must occur prior to enforcement of the challenged state statute have yet to occur. There not being any determination or notice that certain sexually oriented material is harmful to minors, the New Mexico statute is simply not operational.

▮ For the plaintiffs to have standing, it is also necessary that they allege an actual dispute which is susceptible to resolution by judicial remedy. In this case, plaintiffs have only challenged the newer § 30–37–2.1. The older, more general statute, § 30–37–2, most likely proscribes the same type of display as proscribed in § 30–37–2.1. If the more specific statute were unconstitutional, the general statute might still be available. As a consequence, plaintiffs would not obtain any effective relief should it be determined that § 30–37–2.1 is unconstitutional. Though usually discussed in the context of mootness, it is fundamental that a federal court will not assume jurisdiction where it cannot grant effective relief. *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir.1984); *United States v. Smith*, 700 F.2d 627, 636 (11th Cir.1983). The court cannot restructure plaintiffs' lawsuit to encompass a challenge to the even broader display proscriptions of § 30–37–2.

▮ Still another reason why federal judicial review may be inappropriate is that certain measures taken by retailers subsequent to the enactment of § 30–37–2.1 ap-

---

**16.** I conclude that there is no objectively reasonable fear of prosecution at this time as a matter of law. Because this is a legal determination, the testimony of two booksellers to the contrary is not relevant. While the testimony of the two booksellers was sincere, a speculative subjective chill will not substitute for specific or threatened or actual harm required to confer jurisdiction. *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972).

pear to be voluntary. For example, the practice of some retailers of placing what plaintiffs' counsel euphemistically called "men's titles" or "sophisticates" behind opaque coverings in order to conceal depictions of nudity may well continue, regardless of the outcome of this lawsuit. On the other hand, plaintiffs contend that although the statute is not yet operational there is a reluctance among some booksellers to display any material within the convenient reach of minors which arguably might be considered "harmful to minors." Perhaps this reluctance arises from a desire to avoid a determination, by the district attorney subject to possible judicial review, that the material previously displayed is "harmful to minors." [17] *See* N.M. Stat.Ann. § 30–37–4 (1985 Supp.) When viewed from this perspective, plaintiffs' position may be that the statute, though not presently operational, may chill the right to display and sell protected material which is arguably harmful to minors. This is too attenuated to constitute a credible threat of prosecution which would create a chilling effect. Anticipating whether and when the statute will become operational and then enforced "takes us into the area of speculation and conjecture." *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). There must be a real

and credible threat of prosecution alive at every stage of the litigation for there to be a case or controversy within the meaning of art. III and the Declaratory Judgment Act. *Ellis v. Dyson,* 421 U.S. 426, 434–35, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975). The case or controversy requirement of art. III is no less applicable to cases involving the first amendment. *Boyle v. Landry,* 401 U.S. 77, 80–81, 91 S.Ct. 758, 759–60, 27 L.Ed.2d 696 (1971).

## V. Conclusion

It seems to me that this is the paradigmatic case for dismissal for lack of jurisdiction. There have been no criminal prosecutions since § 30–37–2.1 was enacted. A prerequisite to any prosecution would be a district attorney's valid determination that any sexually oriented material now offered for sale in the county was "harmful to minors." N.M.Stat.Ann. § 30–37–4. No district attorney has made such a determination. There must also be actual or constructive notice prior to prosecution. *Id.* No such notice has been given. The statute has yet to become operational at the state district court level. Nor has it been interpreted or applied by any appellate court in New Mexico. This court, knowing nothing of actual or imminent prosecution, declines to dote about questions and strifes

---

17. The district attorney of Bernalillo County testified that there has not been a single prosecution under either § 30–37–2 or the newer § 30–37–2.1. Thus, there has been no prerequisite determination that any material is "harmful to minors" in accordance with § 30–37–1(F); nor is there any indication that such a determination is imminent. Rather, the district attorney indicated that he would only consider making the statute operational if a complaint occurred in a specific situation. Even then, he testified that he would have to work out an operating procedure for handling such a complaint, seek the advice of his assistants concerning legal precedent, and finally consult with others concerning the application of the statute. The choice of whether to make the statute operational and then whether to enforce it lies in the discretion of the district attorney. N.M.Stat. Ann. § 36–1–18(A) (1984 Rep.Pamp.); *State v. Session,* 91 N.M. 381, 382, 574 P.2d 600, 601 (Ct.App.1978). There is no requirement that he make any determination or take enforcement action. The district attorney repeatedly empha-

sized the hypothetical nature of his testimony concerning the statute. That testimony corroborates the legal finding that there is no reasonable fear of prosecution. If the government does not intend to prosecute, there is no case or controversy. *Carlin Communications, Inc. v. F.C.C.,* 749 F.2d 113, 123 n. 20 (2d Cir.1984). Nor have the plaintiffs alleged or presented any evidence indicating that the district attorney is using the existence of the statute as an informal threat to inhibit the circulation of sexually oriented material. *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66–69, 83 S.Ct. 631, 637–38, 9 L.Ed.2d 584 (1963); *Penthouse International Ltd. v. McAuliffe,* 610 F.2d 1353, 1359–60 (5th Cir.), *cert. denied,* 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980) (program of harassment by county officials against retail booksellers selling sexually oriented publications operated as an informal system of prior restraint and refuted contention that retailers and distributors voluntarily removed such publications from their shelves).

of words, whereof cometh railings and evil surmises. *I Timothy* 6:4.

An order will be entered accordingly.